In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2677

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LOUIS TOWNSEND,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 12 CR 357-1 — **Edmond E. Chang**, *Judge*.

ARGUED JANUARY 9, 2014 — DECIDED AUGUST 12, 2014

Before MANION and SYKES, *Circuit Judges*, and GRIESBACH, *District Judge*.[*]

SYKES, *Circuit Judge*. Louis Townsend pleaded guilty to possessing a firearm as a felon and was sentenced to 71 months

---

[*] Chief Judge of the Eastern District of Wisconsin, sitting by designation.

in prison. He challenges his sentence on several grounds, but the government questions whether the appeal is timely. Townsend's deadline for filing a notice of appeal was July 22, 2013. On July 17 he filed a motion titled "Defendant Louis Townsend's Motion to Reconsider His Sentence." By statute a motion for sentence modification must be brought under Rule 35 of the Federal Rules of Criminal Procedure, and motions under that rule don't extend the time for filing an appeal. So the due date for Townsend's appeal remained unchanged notwithstanding the motion.

The district court denied reconsideration on July 19. Townsend filed his notice of appeal on July 30. That was eight days too late, so we dismiss the appeal as untimely.

## I. Background

Late one evening in November 2011, Chicago police officers spotted Townsend walking in an alley with a visible handgun tucked in his waistband. When Townsend saw the officers, he tossed the gun on the ground next to a fence. At the time Townsend was on parole, having been released early from a lengthy sentence for a murder he committed in 1996. He also had several other convictions for weapons offenses and crimes of violence. Police retrieved the discarded gun—a loaded Smith & Wesson .38 Special—and found additional ammunition in Townsend's pants pocket. The case was referred to federal authorities.

Townsend was indicted for possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). He pleaded guilty. At the

initial sentencing hearing, the government called two of the arresting officers to establish a factual basis for application of a four-level guidelines enhancement for possessing a firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). Officers Hanrahan and Staunton testified that after administering *Miranda* warnings, they questioned Townsend about the gun, and he told them that he planned to rob someone on the street. Based on this testimony, the government asked the judge to apply the four-level enhancement under § 2K2.1(b)(6)(B). Townsend objected. The judge deferred a ruling on the issue and continued the hearing.

In the meantime, the government informed the court in writing that it did not intend to call Officer Murphy, a third officer who had participated in Townsend's arrest. The government reiterated this point at the next hearing. Discussion ensued about the need for the third officer's testimony, but the matter was not resolved. The judge again continued the proceedings to give Townsend an opportunity to subpoena Officer Murphy if he wished.

Anticipating that Townsend might call Officer Murphy when sentencing resumed, the government filed a sealed "*Ex Parte* Submission Regarding Anticipated Evidence at Sentencing." This filing informed the court that Officer Murphy would not offer any testimony favorable to the defense and explained that Townsend might be calling him for the sole purpose of impeaching him with a district-court opinion issued in another case. In that opinion, a different judge in the Northern District of Illinois determined that Murphy had "acted with reckless disregard for the truth" when securing a search warrant from

a state judge. *United States v. Simmons*, 771 F. Supp. 2d 908, 920–21 (N.D. Ill. 2011). Because Townsend—not the government—planned to call Officer Murphy, and because Murphy had no exculpatory testimony to offer, the government asked the court to issue a sealed, ex parte order declaring that the government had no duty to disclose the *Simmons* case to the defense. Although the *Simmons* decision was in the public domain and readily available, the court agreed to issue the order.

When sentencing resumed, the government again disavowed any intent to call Officer Murphy to testify and advised the court that if Townsend did so, the government would not rely on the officer's testimony even if it was favorable to the prosecution. By this time the government had repeatedly informed Townsend that Murphy had nothing favorable to say for the defense. Townsend called him anyway, to no avail: Officer Murphy's testimony was entirely consistent with that of his fellow officers. The judge applied the four-level enhancement under § 2K2.1(b)(6)(B) after concluding that the testimony of the government's witnesses alone—Officers Hanrahan and Staunton—was sufficient to support it.

With the enhancement, Townsend's offense level was 21. When combined with a criminal history category III, the guidelines range was 46 to 57 months. The judge concluded that the range understated the risk that Townsend posed to the public. Among other things, the judge was troubled by Townsend's juvenile record, which included a delinquency adjudication for shooting a person in the stomach. The judge

eventually settled on an above-guidelines sentence of 71 months.

In doing so, the judge rejected Townsend's argument that the conditions of his pretrial confinement were so harsh as to warrant a reduction in his total sentence. Townsend complained that it took jail officials more than four months to authorize surgery to repair his torn Achilles tendon. He maintained that the delay inhibited his ability to fully recover once the surgery was performed. The judge found this argument implausible as a basis for a lower sentence, holding that even if jail officials had dragged their feet in treating Townsend's injury, their conduct did not justify a lower sentence.

Townsend was sentenced on July 1, 2012. Shortly thereafter, the government alerted the defense to the *Simmons* case. On July 17 Townsend filed a motion for reconsideration of his sentence, arguing that the government breached its *Giglio* obligations by failing to disclose the *Simmons* case, which might have been used to impeach Officer Murphy. *See Giglio v. United States*, 405 U.S. 150 (1982).

Two days later the judge denied the motion as untimely under Rule 35 of the Federal Rules of Criminal Procedure, which allows sentence modification only in very limited circumstances and then only within the 14-day period following oral pronouncement of the sentence. The 14-day window had closed by the time Townsend filed his motion. The judge also noted that even if the motion had been timely, it was plainly meritless: The *Simmons* case only affected the credibility of Officer Murphy, who was called by the defense, and anyway

the court had relied solely on the unaffected testimony of the other two officers in applying the enhancement under § 2K2.1(b)(6)(B). As an aside, the judge remarked on the "non-confidential nature of the negative credibility information" about Officer Murphy and suggested that the "better practice" would have been to alert the defense to the *Simmons* decision and then move in limine to preclude its use.

Townsend filed his notice of appeal on July 30.

## II. Discussion

Townsend challenges the denial of his motion for reconsideration and raises several other claims of error regarding his sentence—namely, the judge's rejection of his argument about conditions of pretrial confinement and reliance on his juvenile adjudication for shooting someone in the stomach. A threshold question, however, is whether Townsend's notice of appeal was timely filed. The government says it was not: The judgment was entered on July 8,[1] and the appeal wasn't noticed until July 30. Townsend had 14 days after the entry of the judgment to file a notice of appeal. FED. R. APP. P. 4(b)(1)(A). This 14-day deadline is not jurisdictional, but it is mandatory and therefore must be enforced if the argument isn't waived. *United States v. Rollins*, 607 F.3d 500, 501 (7th Cir. 2010).

---

[1] There is some disagreement as to when the order was actually entered. The judgment was signed and dated July 3, but the docket can be read to suggest that it was entered on July 8. This disagreement makes no difference in this appeal, so we will assume that the judgment was entered on July 8.

Townsend counters that the 14-day deadline should be calculated from July 19, the date the court denied his motion for reconsideration, rather than July 8, the date judgment was entered. This argument presupposes that a motion for reconsideration suspends the time limit for appeal. No federal rule or statute allows a motion to reconsider in a criminal case, but reconsideration motions are accepted as a common-law practice. *See, e.g.*, *United States v. Healy*, 376 U.S. 75, 79–80 (1964). If a common-law motion for reconsideration is filed within the time ordinarily given for noticing an appeal, the motion is considered timely and renders the court's initial judgment nonfinal. *See id.* at 78–79. Thus, there is no final judgment until the court rules on the motion for reconsideration, which opens a new window for an appeal. *See Rollins*, 607 F.3d at 502–04.

But Congress long ago abrogated this common-law practice in the sentencing context. The Sentencing Reform Act of 1984 explicitly prevents district courts from "modify[ing] a term of imprisonment once it has been imposed" except in three narrow situations. 18 U.S.C. § 3582(c). Two of the exceptions are irrelevant here; one requires a motion from the Bureau of Prisons, § 3582(c)(1)(A), and the other a change in the applicable sentencing guidelines, § 3582(c)(2). The remaining exception applies more generally but is restrictive in nature: The court may modify a sentence only to the extent "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." § 3582(c)(1)(B).

Sentence modification under Rule 35 is extremely limited. In the absence of a motion from the government, the court has

authority to modify a sentence only if the sentence originally imposed "resulted from arithmetical, technical, or other clear error," and even then the court must act within 14 days after the sentence is orally announced. FED. R. CRIM. P. 35(a). Moreover, "[t]he filing of a motion under Federal Rule of Criminal Procedure 35(a) does not suspend the time for filing a notice of appeal from a judgment of conviction." FED. R. APP. P. 4(b)(5).

All of these provisions were designed to circumscribe the authority of the district court to modify sentences after pronouncing them. Before the Sentencing Reform Act, Rule 35(a) broadly authorized district courts to "correct an illegal sentence at any time" and to "correct a sentence imposed in an illegal manner within the time provided … for the reduction of sentence." 18 U.S.C.A. Fed. R. Crim. P. 35(a), Rule Applicable to Offenses Committed Prior to Nov. 1, 1987 (West 2014). The Sentencing Reform Act eliminated that power entirely. *See* Sentencing Reform Act of 1984, Pub. L. No. 98-473, Title II, ch. II, § 215(b).

Even after this change in the law, however, a few courts held that district judges retained some inherent authority to correct sentencing errors within the time allowed for filing an appeal. *See, e.g.*, *United States v. Cook*, 890 F.2d 672, 675 (4th Cir. 1989). Rule 35 was modified again to curtail that development; today's Rule 35(a) allows for some reconsideration of a sentence, but the authority is very narrowly limited to arithmetical, technical, or other "clear error" and *must* be exercised within the "stringent time requirement" of 14 days. FED. R. CRIM. P. 35 advisory committee's note, 1991 amendments. The

Sentencing Reform Act also imposed the limitation in § 3582(c), preventing courts from modifying a term of imprisonment except as provided by Rule 35 or statute. This provision addressed Congress's concern that judges were introducing uncertainty into the sentencing process by exercising their common-law power to revise sentences. *See United States v. Smith*, 438 F.3d 796, 798–99 (7th Cir. 2006) ("One fundamental change made in 1984 was to provide that, once sentence has been imposed, neither the judge nor a parole board may make changes.").

The unmistakable effect of these amendments was to abrogate the district court's common-law power to revisit a sentence and to tie any sentence reconsideration to narrowly drawn textual provisions. Townsend's argument relies on cases holding that common-law reconsideration is authorized *outside* the sentencing context. We do not question this understanding of the court's retained common-law authority, but it simply has no application here. None of Townsend's cases suggest that this principle trumps statutes and rules expressly aimed at eliminating common-law reconsideration of sentences; indeed, none of the cases address the Sentencing Reform Act at all. *Cf. United States v. Phillips*, 597 F.3d 1190, 1200 (11th Cir. 2010) ("[T]hese decisions did not involve a motion to correct an imprisonment sentence and therefore they did not need to address the unambiguous language in § 3582(c)(1)(B) which prohibits a district court from modifying an imprisonment sentence *except* as 'expressly permitted by statute or by Rule 35.'").

Most cases allowing common-law reconsideration motions address issues related to convictions. *See, e.g.*, *United States v. Ibarra*, 502 U.S. 1, 6 (1991) (reconsideration of pretrial motion to suppress); *Rollins*, 607 F.3d at 501 (reconsideration of motion for new trial). Others were decided before the Sentencing Reform Act took effect and are not helpful here. *See, e.g.*, *United States v. Kalinowski*, 890 F.2d 878, 881–82 (7th Cir. 1989) (dealing with conduct occurring before November 1, 1987, when the Act took effect). Other cases have *rejected* the availability of a common-law motion to reconsider a sentence, albeit without mentioning the Sentencing Reform Act. *E.g.*, *United States v. Redd*, 630 F.3d 649, 650 (7th Cir. 2011) (finding motion for reconsideration of sentence "ineffectual" as a common-law motion because it was not timely); *see also United States v. Beard*, 745 F.3d 288, 291 (7th Cir. 2014) (same). These opinions instead construed the reconsideration motions as having been filed under a statutory exception to the § 3582(c) bar, not a common-law rule. *See Redd*, 630 F.3d at 650 ("The document therefore was … a new motion for a lower sentence under § 3582(c)(2)."); *Beard*, 745 F.3d at 291 (same).

Notwithstanding the clear import of the Sentencing Reform Act, a few unpublished orders from this circuit suggest that a common-law motion for reconsideration might be available in the sentencing context. *See, e.g.*, *United States v. Murry*, 515 F. App'x 602, 603 (7th Cir. 2013); *United States v. Jumah*, 431 F. App'x 494, 496 (7th Cir. 2011). But unpublished decisions are not binding on subsequent panels. *See* 7TH CIR. R. 32.1(b) ("Orders, which are unsigned, … are not published in the Federal Reporter, and are not treated as precedents."). More-over, these decisions lack any sustained discussion about the

propriety of common-law reconsideration of sentences, and they fail to explain how a common-law practice could create an exception to the clear text of § 3582 and Rule 35. *Cf. United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999) ("We agree that generally district courts do have 'inherent authority' to decide motions for reconsideration or rehearing of orders in criminal proceedings, even when there is no statute authorizing such motions. … The government has not cited any authority, however, that applies the 'inherent authority' rule when there are *express statutory provisions* generally *prohibiting* motions for reconsideration."). We disavow anything in our unpublished decisions suggesting that district courts retain common-law authority to reconsider a sentence.

This case is governed by statutes and the federal rules of procedure, not any common-law practice. Townsend cites no statute permitting this sort of reconsideration, so under the plain text of § 3582(c), the court was authorized to proceed only within the constraints of Rule 35. And according to Rule 4(b)(5) of the Rules of Appellate Procedure, proceedings under Rule 35 do not suspend the time for filing a notice of appeal. *See United States v. Dotz*, 455 F.3d 644, 648 (6th Cir. 2006) (holding that motions for reconsideration of a sentence, "regardless of creative characterization," do not suspend the time for filing an appeal because "there is simply no such thing as a 'motion to reconsider' an otherwise final sentence"). Thus, Townsend's motion did not affect the time limit for filing a notice of appeal. Townsend's notice was eight days late. Because the government has raised the timeliness issue, this appeal must be dismissed as untimely.

DISMISSED.