**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 8 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

TRANSWESTERN PUBLISHING
COMPANY LP,

      Plaintiff-Appellant,

    v.

MULTIMEDIA MARKETING
ASSOCIATES, INC; MULTI-VEST, a
partnership; ROBERT DUPRIEST;
LARRY WIBBEN; DENNIS HOFF;
JOEL ALDAY; ROBERT HOLMES;
MALLIE NORTON; TOM CLARK;
TOM RABY; ROBERT BOONE;
SHANE HOUSTON; VERNOISE
ANDREWS; DON LIGHTNER; J.
COURTNEY EGGER; JEFF ALLEN;
MULTI DIRECTORIES L.L.C.,

      Defendants-Appellees.

No. 96-6371

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 96-cv-371-C)

---

James Minor Bailey, III, Ponca City, Oklahoma (Jerry J. Dunlap, II, Oklahoma
City, Oklahoma, with him on the briefs) for Plaintiff-Appellant.

William S. Dorman of Dorman & Gilbert, Tulsa, Oklahoma (Mark Pordos of Eagleton & Nicholson, Oklahoma City, Oklahoma, with him on the brief) for Defendants-Appellees.

--------------------

Before BRISCOE, LOGAN, and LUCERO, Circuit Judges.

--------------------

LOGAN, Circuit Judge.

--------------------

Plaintiff TransWestern Publishing Company LP appeals the district court's judgment denying a permanent injunction in plaintiff's copyright infringement action against defendants Multimedia Marketing Associates, Inc.; Multi-Vest, a partnership; Multi Directories, L.L.C. and thirteen individuals (collectively "defendants"). The case stems from defendants' publication of a combined white and yellow pages telephone directory containing advertisements resembling those in plaintiff's directory. The appeal requires us to consider the law enunciated in Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340 (1991), involving white pages factual information, in the context of directories containing yellow pages advertising.

I

In 1995, plaintiff published a combined white and yellow pages "Ponca City Area" telephone directory which included listings for Ponca City and seventeen nearby towns and white and yellow pages advertisements. Account

- 2 -

executives solicited advertisements and prepared ad layout sheets with customer input. Although they did not create original artwork, the account executives arranged information so that it was "pleasing to the eye." I App. 223-24. Plaintiff copyrighted its directory but not the individual ads.

Defendants thereafter published the "1996 Ponca City Community Directory." This directory contained listings for only eight towns, as well as white and yellow pages advertisements. A number of these advertisements were very comparable to those in the TransWestern directory. The infringement claim alleges defendants copied advertisements from plaintiff's directory.

Plaintiff obtained a preliminary injunction preventing the distribution or display of defendants' directory. At the permanent injunction hearing plaintiff introduced a single witness and several exhibits in its case in chief. The district court granted defendants' motion for judgment as a matter of law and made specific fact findings. The court noted likenesses such as their use of front and back cover advertising, comparable introductory information, and advertisements from some of the same businesses. The court then held that "business card" ads and those incorporating the advertisers' own logos or slogans were not original to plaintiff and thus not copyrightable. The court found that other ads were not substantially similar because of different type styles, sizes and shapes of the ads, and the arrangement of information.

II

We turn now to whether plaintiff established a case of copyright infringement. The district court granted defendants' motion for judgment as a matter of law after a permanent injunction hearing at which plaintiff presented its evidence in support of its claim of copyright infringement. Thus, the court made its ruling under Fed. R. Civ. P. 50(a) or 52(c). See Advisory Committee Notes to 1991 amendments (noting Rule 52(c) "parallels the revised Rule 50(a)"). We review the court's findings of fact under a clearly erroneous standard. Id. Findings of fact are clearly erroneous when they are unsupported in the record, or if after our review of the record we have "the definite and firm conviction that a mistake has been made." Sanchez v. State of Colorado, 97 F.3d 1303, 1308-09 (10th Cir. 1996) (quotations and citations omitted). We review de novo the district court's interpretation of the applicable law. Mitchell v. Maynard, 80 F.3d 1433, 1438 (10th Cir. 1996).

To establish copyright infringement plaintiff must prove (1) ownership of a valid copyright and (2) "copying of constituent elements of the work that are original." Feist, 499 U.S. at 361 (white page listing information in public utility directory not copyrightable). Defendants do not seriously contest that plaintiff has a valid copyright on its directory.[1]

---

[1] The copyright registration certificate purports to register the "Ponca City Area,
(continued...)

The second element requires proof that defendants copied plaintiff's work and that the elements copied were protected. Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1284 (10th Cir. 1996). Although the record does not establish that defendants copied plaintiff's publication, copying may be shown by "establishing that Defendants had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material." Id. Defendants did not dispute their access. Although they deny appropriating component elements of plaintiff's publication, strong similarities exist between some of plaintiff's and defendants' ads. We thus examine the nature of plaintiff's directory and the scope of protection available to it.

Plaintiff's directory is a compilation. The certificate of registration for 1995 treats it as a "derivative work or compilation" and states it is a "Revised compilation in yellow pages." II R. 236. To be copyrightable, a compilation must be "a [1] work formed by the collection and assembling of preexisting materials or of data that [2] are selected, coordinated, or arranged in such a way

[1](...continued)
OK July 1996 Telephone Directory." II App. 235-36. Defendants argue that copyright registration covers only the yellow pages portion of plaintiff's directory. At the permanent injunction hearing, however, defendants did not challenge whether the copyright registration protected the entire directory or merely the yellow pages. We assume for purposes of this opinion that plaintiff's copyright is valid as to the whole book.

that [3] the resulting work as a whole constitutes an original work of authorship."

17 U.S.C. § 101; Feist, 499 U.S. at 357 (explaining tripartite structure of statute).[2]

The directory is, at least primarily, a compilation of facts. A factual compilation

is copyrightable but the facts themselves are not. Id. at 345. In Feist, the

Supreme Court explained the difference between facts and copyrightable

compilations: a compilation of facts or preexisting data is only protectible insofar

as it features original selection, arrangement or coordination of facts as they

appear in the "work as a whole." Id. at 356, 358; 17 U.S.C. § 101.

> The protection for a copyrighted compilation
>
> extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership or subsistence of, any copyright protection in the preexisting material.

17 U.S.C. § 103(b) (emphasis added). "The mere fact that a work is copyrighted

does not mean that every element of the work may be protected." Feist, 499 U.S.

at 348. Determining "whether an infringement of a compilation copyright has

occurred is particularly difficult where less than the entire work is copied,"

BellSouth Advertising & Publ'g Corp. v. Donnelley Information Publ'g, Inc., 999

---

[2] Because all compilations are a collection of preexisting facts or data, the first element of the definition will always be satisfied. Key Publications, Inc. v. Chinatown Today Publ'g Enters., Inc., 945 F.2d 509, 513 (2d Cir. 1991).

F.2d 1436, 1438 (11th Cir. 1993) (en banc), especially when a competitor can take "the bulk of the factual material from a preexisting compilation without infringement." Id. at 1445. The protection available for a compilation is "thin." Feist, 499 U.S. at 349; see also BellSouth, 999 F.2d at 1439 (applying Feist and concluding that defendant did not appropriate "original elements" of BellSouth directory "as a whole" by preparing data base and sales leads based upon listing information and units of advertising appearing in preexisting directory). The focus is on "the selection, coordination, or arrangement of listings in the directory [which must be] sufficiently original or creative [that] the directory will be entitled to a copyright." Key Publications, Inc. v. Chinatown Today Publ'g Enters., Inc., 945 F.2d 509, 513, 516 (2d Cir. 1991) (recognizing copyrightability of specialty directory but concluding no infringement by smaller competing publication that utilized "significantly different principles of [listing] selection"). See also Feist, 499 U.S. at 345-47.

Although a compilation gains copyright protection with only minimal creativity in the selection and arrangement of facts, Feist's statement that the copyright is "thin" has implications when the holder sues an alleged infringer. "It would seem to follow analytically that more similarity is required when less protectible matter is at issue. Thus, if substantial similarity is the normal measure required to demonstrate infringement, 'supersubstantial' similarity must pertain

when dealing with 'thin' works." 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 13.03[A] at 13-28 (1997); see also Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectible and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."), cert. denied, 115 S. Ct. 1176 (1995); Jane C. Ginsburg, No "Sweat"? Copyright and Other Protection of Works of Information After Feist v. Rural Telephone, 92 Colum. L. Rev. 338, 349 (1992) ("'Even if the compilation is deemed original, what kind of copying will be held to infringe it?' The answer [after Feist] appears to be: 'Virtually none, short of extensive verbatim copying.'"). Further, because the copyrightability of a factual compilation depends upon the originality in selection, coordination or arrangement of the facts "as a whole" work, 17 U.S.C. § 101, in an infringement action the court must compare the allegedly infringing work as a whole also.

In the instant case, if we focus on the respective directories as a whole there are many differences. The district court's opinion noted some:

> The directories are very different in appearance. The Transwestern directory is approximately 5" by 7" in size and has a yellow cover. The Community Directory is larger in size and has a green cover. Both directories have advertisements on their covers; although the advertisements are different on each directory. Although similar introductory information is contained in each directory, the format, layout and content varies between the two directories. The Transwestern Directory includes [18] towns . . . . The Community Directory provides listings for [8 towns].

I R. 84. Plaintiff's directory is indexed; defendants' is not. Plaintiff's white pages are alphabetized with all the listings together; defendants organized their white page listings alphabetically by town. The directories use different typefaces, and defendants' directory contains significantly fewer pages. Plaintiff's directory has two columns, defendants' three in its advertising pages. The type styles are different; the headings to the business listings are distinctive. Even accepting as true plaintiff's contention that "numerous" ads in its directory have been copied to defendants' directory, no one would mistake defendants' directory for that of the plaintiff. Thus, at a thin level of comparison of the compilation "as a whole" the district court's finding of no infringement must be affirmed.

## III

This circuit in other contexts has applied an abstraction-filtration-comparison test in copyright infringement cases. See Country Kids, 77 F.3d at 1284-85 (wooden dolls); Gates Rubber Co. v. Bando Chemical, Ltd., 9 F.3d 823, 834 (10th Cir. 1993) (computer program); Autoskill v. National Educational Support Systems, Inc., 994 F.2d 1476, 1491-92 (10th Cir. 1993) (computer program). That test requires filtering out nonprotectible ideas and components and then comparing protectible elements in the plaintiff's work with the defendant's allegedly infringing product. We have recognized that this test is not

appropriate for every case, depending on the claims involved, the procedural posture, and the nature of the work at issue. See Mitel, Inc. v. Iqtel, Inc., 124 F.3d 1366, 1372-73 (10th Cir. 1997); Gates, 9 F.3d at 834 n.12.

The Second Circuit's decision in Key Publications is the post-Feist decision most nearly like the case before us. It involved competing yellow page directories for Chinese-American businesses in New York City. Holding that "thin" protection available for compilations was not meant to be "anorexic," the court stated the test as one in which the plaintiff must show "substantial similarity between those elements, and only those elements, that provide copyrightability to the alleged infringed compilation." Key Publications, 945 F.2d at 514. This seems a distillation into fewer words of the abstraction-filtration-comparison test.

The district court in Key Publications had found that 1,500 listings, 75%, of the 2,000 listings in the defendants' directory, were deliberately copied from the plaintiff's directory. Making a facial examination the appellate court reversed, noting substantial dissimilarities in the selection and arrangement of the directories, especially in that the defendants' directory had many fewer classified headings, had only 17% of the total number of listings in the plaintiff's directory, and 25% of its listings were not in the plaintiff's directory. Key Publications appears to have involved only listings, classifications, and arrangements; there was no discussion of advertisements.

- 10 -

Plaintiff's infringement claim in the case before us is based on its contributions to the yellow page advertisements in its directory that were allegedly copied by defendants. Plaintiff's employees apparently solicited those ads, yet they are fundamentally fact compilations essentially like the business listings gathered and arranged by the plaintiff in Key Publications. Treated as a fact compilation protection is available only to the extent the work as a whole possesses the requisite originality. But even if we ignore all elements of the two directories that are different and look only at those that are alike plaintiff loses in the case before us. Plaintiff's case founders on the lack of evidence of its creative contributions to copied material.

Plaintiff asks the court to note the similarities of the ads it attached to its complaint and those contained in its Exhibit 7 introduced at the permanent injunction hearing. But it must show its original contributions to those ads. At the permanent injunction hearing plaintiff presented one witness and seven exhibits. The exhibits were the copyright registration certificate, the two directories, three exhibits of layout sheets for advertisements plaintiff said its employee prepared--for Skinsations Tattoo Studio, TWT Heat & Air, and Smith's Home Furnishings--and Exhibit 7. Exhibit 7 was a notebook of some 600 pages, consisting of an index and pages from the respective directories showing plaintiff's ads on the left and defendants' allegedly infringing ads on the right.

Only 252 pages of Exhibit 7 are excerpted in the record on appeal; the TWT Heat & Air exhibit is not in the appellate record.

Plaintiff's witness was Timothy Dancey, one of its account executives, who also was its sole witness at the preliminary injunction hearing. On direct examination he simply identified plaintiff's exhibits and testified that with new customers they: "usually do ad copy together, figure out what size ad they want and we work out a program for them at that time," I R. 193; take into possession logos given them by customers and sometimes make logos; write down information to be placed in the ad given them by customers, sometimes themselves suggesting information to be included; and arrange the verbiage, logos and artwork provided by the customer into the advertisement using a layout sheet. Id. at 194-95. The witness then said he designed and created the ads on the layout sheets for Skinsations Tattoo Parlor, TWT Heat & Air, and Smith Home Furnishings.

On cross-examination the witness admitted that the artwork on the Skinsations ad was supplied by the customer and he only provided the written information; on the TWT ad he provided the Rheem logo which he admitted he probably got from someone else's ad, and he and the business owner together contributed the words on the ad, id. at 208-09; on the Smith ad the sentence

"We're Committed to Earning Your Business" was a logo he did not provide, the picture came from the customer, and other items and logos came from clip art.

Later the following exchange took place:

Q.    Are there any ads that you did the artwork on yourself, any ads in the book?

A.    As far as drawing a picture?

Q.    Well, contributing anything in the way of artwork.

A.    Sure, on logos, on certain logos in the book.

Q.    You created the logos yourself?

A.    Uh-huh.  When I say "logos," I mean like a name.

Q.    Could you direct our attention to one such ad, please.

A.    I can't think of one right now.  The Paper Hanger.  I wrote that in.

. . . .

Q.    I don't understand.  What's the logo?

A.    The block print.

Q.    Huh?

A.    The block print.

Q.    You say "the block print"?

A.    There's not a picture of anything.

Q.    The block print of "The Paper Hanger"?

A.    Uh-huh.

. . . .

A.    Just the name, "The Paper Hanger."  I did that on many ads.

Q.    The block print right there (INDICATING)?

A.    Uh-huh.

Q.    You call that artwork; is that right?

A.    I wrote it.

Q.    Okay.  Is that the same in the [defendant's ad]?

A.    The text is the same.

Q.    What about the logo, is that the same?

A.    It's set up a little different.

Q.    Are there any other ads besides this Paper Hanger where you contributed the artwork yourself?

A.    I remember Kay Refrigeration, I believe.

Q.    Is that here?

A.    It's in here someplace, I'm sure.  It's really just names on some of those.

Q.    Just names?

A.    Uh-huh, like that one.

Q.    That's primarily information, is it not?

A.    That is information.

Q.      Apart from the names we just referred to, the logo "The Paper Hanger," did you contribute any other artwork to any of the ads?

A.      Artwork meaning pictures, no.  Artwork meaning making them pleasing to the eye, yes.

Q.      That would be in the way it was typed, right, the size and style of the type?

A.      Either that, yes, or just saying something to catch the eye.

Q.      But pictures and logos, you wouldn't have anything to do with that, would you?

A.      No, I did not draw pictures.

I R. 221-24.

On redirect the witness stated that he took the information and artwork on the three ads to which he had testified and "arranged and designed it into the ad." Id. at 228.  This summarized and quoted testimony is all of plaintiff's evidence of its "original" contributions to the ads in its directory.

Even if we credit the testimony as showing original contributions to the Skinsations, TWT, and Smith ads, there is nothing in the appellate record to show defendants copied any of those ads.  There is no Skinsations ad in defendants' directory, see II R. 317-18; a TWT ad appears in defendants' directory, id. at 296, but the record does not show what plaintiff's TWT ad looked like; and the Smith Home Furnishings ad in defendants' yellow pages, id. at 93, bears no resemblance to the ad laid out in plaintiff's Exhibit 6, id. at 243-49.  In the white pages of

defendants' directory there is a version of a business card ad for Smith Home Furnishings, with the same information as plaintiff's business card ad for that company--name, address, phone number, picture, and slogan--but with a significantly different configuration, placement of the information, and type style. See id. at 497-98.

To find original and hence protectible contributions by plaintiff to its yellow page ads the court would have to credit the vague and general testimony of the witness that he "arranged" information provided by his customers and "designed" the ads--without himself providing any of the artwork--although he did not identify how his contribution was original in any particular ad allegedly copied by defendants. Thus, even if we were to accept plaintiff's request to compare the allegedly infringing ads for their similar order and placement of information and artwork we cannot qualitatively analyze plaintiff's contribution.

At the preliminary injunction hearing, witness Dancey had testified that all the ads in plaintiff's directory were either designed by him or his predecessor "or they were given to us by the customers in our book." II R. 164. He then said fifty percent were "altered old ads that were in there where he wanted to make a change," id. at 165. This simply underscores the deficiencies in plaintiff's evidence. Thus, even if we were to look only to the ads defendants allegedly

copied, and ignore all differences between the directories, we would have to affirm the district court's denial of the injunction.

IV

By focusing its contentions for infringement on its contributions to individual advertisements in its directory, plaintiff appears to argue that the ads should not be treated as fact compilations but as unique creations. If each ad is a separate creation, akin to short stories with individual authors, plaintiff's yellow pages directory would be a collective work. Plaintiff admitted its advertisers provided input into each ad, and some were given to plaintiff by their customers-- thus not created by plaintiff in any sense. A collective work for copyright purposes is still a compilation, 17 U.S.C. § 101, but one "in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." Id. So viewed there exists another barrier to plaintiff's infringement claim, 17 U.S.C. § 404(a). That section provides as follows:

> A separate contribution to a collective work may bear its own notice of copyright, as provided by sections 401 through 403. However, a single notice applicable to the collective work as a whole is sufficient to invoke the provisions of section 401(d) or 402(d), as applicable with respect to the separate contributions it contains (not including advertisements inserted on behalf of persons other than the owner of copyright in the collective work), regardless of the ownership of copyright in the contributions and whether or not they have been previously published.

- 17 -

Id. § 404(a) (emphasis added).

In Canfield v. Ponchatoula Times, 759 F.2d 493 (5th Cir. 1985), the court examined the effect of the parenthetical exclusion in § 404(a) in the context of one newspaper publishing an ad that had been created by another newspaper. The ad, as in the case before us, had not been separately copyrighted but the newspaper in which it appeared had been copyrighted as a whole. The court assumed the first newspaper owned the copyright to the ad, but held the effect of the parenthetical phrase was to deny protection when it was copied in another publication. "Advertisements inserted in a collective work on behalf of persons other than the collective work copyright owner are not protected by a copyright notice applicable to the work as a whole." Id. at 495.

> [T]here is no doubt Congress intended to carve out a special exception for advertisements which would require that a separate copyright notice appear in the advertisement itself. The committee notes make clear that this exception was regarded as necessary because of the nature of advertisements which were regarded as a unique form of copyrightable material. Their uniqueness stems from the fact that advertisements are creations which are commonly published in more than one periodical and seldom display separate copyright notice. The committee notes recognize this as particularly true of advertisements published in major advertising media such as newspapers and magazines.
>
> . . . .
>
> . . . . The delineation is not based on who owns the copyright. It does not matter whether the publisher, advertiser, or another owns the copyright. Separate notice is required for any advertisement

inserted on behalf of someone other than the collective work copyright owner.

Id. at 496.

In Canfield the advertiser was the moving force in asking the second newspaper to publish the ad. In the case before us plaintiff asserts that many advertisers had not given defendants permission to reproduce their ads. That is contrary to the testimony of defendants' manager at the preliminary hearing, I R. 173, and it is difficult to see why advertisers would object when defendants published ads at no charge to the advertisers.[3] We note that no advertiser is a party to this suit, and plaintiff's witness at the permanent injunction hearing admitted that its contracts with advertisers contained a statement, "Advertiser assumes sole responsibility for the protection of its copyright in any writing, illustration, design, map, photograph, or combination thereof included in said item of advertising." Id. at 226.[4]

---

[3] Apparently defendants attempted to enter the area market to produce a directory that would compete with the Southwestern Bell and TransWestern directories by offering advertisers free ads. This is the same technique the instant plaintiff used to enter the Wichita, Kansas, area to produce a directory to compete there with the Southwestern Bell directory. See Southwestern Bell Media, Inc. v. TransWestern Publishing, Inc., 670 F. Supp. 899 (D. Kan. 1987); id., 685 F. Supp. 779 (D. Kan. 1988).

[4] The issues of who may or must be parties to an infringement action involving an ad subject to this provision, or the provision's intended scope, need not be resolved in this case.

Treating the yellow pages advertising as creations that are something more than compilations of facts, we hold that under 17 U.S.C. § 404(a), the existence of a copyright notice on plaintiff's directory is insufficient to prohibit the copying of an advertisement from that directory, absent a copyright notice specific to the advertisement itself. As the concurring opinion states, under the Berne Convention Implementation Act of 1988, copyright notice is no longer mandatory. This has no bearing on our holding regarding 17 U.S.C. § 404(a), however. Section 404(a) has always provided that copyright notice is optional on collective works. It defines the scope of protection available to collective works when they do contain a copyright notice: the notice invokes the protections of §§ 401(d) and 402(d) with respect to separate contributions but not as to advertisements inserted by someone other than the copyright owner.[5] Because there is no separate copyright on the ads allegedly copied, plaintiff cannot use this provision to gain protection for the third party ads through the existence of a copyright notice for the overall collective work.

In this case, under § 404(a) the notice protecting the overall collective work does not extend to the ads in question. As plaintiff has failed to present evidence

---

[5] The Berne Convention, as implemented, amended § 404(a) to add references to §§ 401(d) and 402(d) after that treaty was adopted. But the amendment did not eliminate the parenthetical discussed in this Section IV. Where the overall collective work is protected by a copyright notice, § 404(a) still refuses to extend the protection afforded by that notice to ads inserted by a third party.

of its original contributions to the advertisements in question, the ads are not protectible even without the mandatory notice requirement.

V

Plaintiff also has asserted that the district court erred in finding that defendants did not copy certain ads created by plaintiff, and in concluding that plaintiff alleged infringement only as to the yellow pages portion of its directory. Our holding effectively disposes of those issues. It does not matter whether defendants copied the ads in plaintiff's directory in the absence of more evidence than was presented here of contributions of originality to ads that supposedly were copied.

As to the white pages issue, we agree with the district court that plaintiff effectively abandoned that claim by choosing not to present evidence at the permanent injunction hearing to support those allegations. The record supports the district court's legal conclusion that plaintiff based its proof at trial on the yellow pages ads only.

AFFIRMED.

**No. 96-6371, <u>Transwestern Publishing Co. v. Multimedia Marketing</u>**

BRISCOE, Circuit Judge, concurring:

I concur in the result because I agree with the majority that plaintiff failed to present sufficient evidence of its original contributions to the yellow-page advertisements at issue to allow us to properly analyze its copyright infringement claims. I write separately, however, because I disagree with several points made by the majority.

In section II of its opinion, the majority compares the directories as a whole. This comparison is irrelevant. Although plaintiff registered its directory as a single work, it has never claimed either that the entire work is original and eligible for protection or that the entire work was copied by defendant (in fact, plaintiff has not even submitted complete copies of either directory). <u>See</u>, <u>e.g.</u>, Aplt's App. I at 92 ("Plaintiff does not contend that Defendants copied its directory in its entirety."). Rather, plaintiff has maintained certain original elements of its copyrighted work, i.e., individual advertisements contained in the work, were copied by defendant without authorization from plaintiff or the advertisers. Thus, the sole focus in this case should be on the individual yellow-page advertisements.

In section III of its opinion, the majority concludes the decision in <u>Key Publications, Inc. v. Chinatown Today Publ'g Enters., Inc.</u>, 945 F.2d 509 (2d Cir. 1991), "is the post-<u>Feist</u> decision most nearly like the case before us." Although

the majority's conclusion may be correct, <u>Key Publications</u> is substantially different from the case at hand and, ultimately, of little assistance. The issue in <u>Key Publications</u> was the copying of listings and headings from the yellow-page section of plaintiff's telephone directory. Contrary to the majority's description, I do not agree that those business listings are "essentially like" the yellow-page advertisements at issue in our case. Unlike the business listings and headings in <u>Key Publications</u>, the advertisements at issue here are individually copyrightable. Thus, comparisons of the directories as a whole (or even the entire yellow-page sections as a whole) are unnecessary in our case because the unauthorized copying of a single copyrightable ad would constitute infringement.

In section IV of its opinion, the majority concludes 17 U.S.C. § 404(a) permits copying of ads from plaintiff's directory absent a copyright notice specific to each ad. I disagree. Prior to March 1, 1989, the Copyright Act required that each copy of a work distributed to the public be marked with a copyright notice. Failure to do so would inject the work into the public domain. The Copyright Act was amended by the Berne Convention Implementation Act of 1988, which became effective March 1, 1989. Under the Berne Convention, copyright notice is optional rather than mandatory; copyright notice is no longer a prerequisite to copyright protection. <u>See</u> 17 U.S.C. § 401(a); <u>see</u> <u>also</u> <u>Norma Ribbon & Trimming, Inc. v. Little</u>, 51 F.3d 45 (5th Cir. 1995). Thus, regardless

of whether one places a copyright notice on his or her work, the work is fully and automatically protected under the Copyright Act from the moment it is fixed in some tangible form (assuming it is published after enactment of the Berne Convention). 17 U.S.C. § 102(a).

The key case relied upon in section IV of the majority's opinion is <u>Canfield v. Ponchatoula Times</u>, 759 F.2d 493 (5th Cir. 1985). In <u>Canfield</u>, a newspaper publisher filed a copyright infringement action against a rival newspaper publisher for reprinting an advertisement that plaintiff's employees designed and printed in one of plaintiff's newspapers. The Second Circuit ultimately concluded plaintiff could not protect its asserted copyright in the advertisement because it had failed to print a separate notice of copyright along with the advertisement. Although the opinion is useful for its holding that advertisements are copyrightable, 759 F.2d at 496, it is otherwise inapplicable because it was issued prior to adoption of the Berne Convention. Under today's standards (i.e., those established by the Berne Convention amendments to the Copyright Act), a separate notice would not be required in order for the plaintiff to protect its advertisements.

The majority apparently reads § 404(a) to require separate copyright registration of any copyrightable advertisements created by the copyright owner of a collective work, but inserted on behalf of other persons. No court has ever

decided this issue and I disagree that § 404(a) provides the definitive answer to the question. In analogous circumstances, several district courts have held registration of a collective work satisfies the requirements of § 411(a) for purposes of bringing an action for infringement of any of the constituent parts as long as the owner of the collective work also owns the constituent parts of the collective work. See Woods v. Universal City Studios, Inc., 920 F. Supp. 62, 64 (S.D.N.Y. 1996)("[W]here the owner of the copyright for a collective work also owns the copyrights for its constituent parts, registration of the collective work satisfies the requirements of Section 411(a) for purposes of bringing an action for infringement of any of the constituent parts."); Greenwich Film Prod., S.A. v. DRG Records, Inc., 833 F. Supp. 248, 252 (S.D.N.Y. 1993) (copyright registration for motion picture was sufficient to cover musical compositions contained in sound track of picture, even though musical compositions were prepared in advance of completion of film); Howard v. Sterchi, 725 F. Supp. 1572, 1575-76 (N.D. Ga. 1989) (holding designer of log homes properly registered her purported copyrights in floor plans, as independent derivative works, by registering the plan books in which they were published). These cases are supported by the leading treatise on copyright law, which suggests separate copyright registration is not necessary where the author of a collective work is also the author of individual works contained therein. See 2 Melville B. Nimmer

& David Nimmer, <u>Nimmer on Copyright</u> § 7.16[B][2], at 7-169 to 7-170 (1996); see also 37 C.F.R. § 202.3(b)(3) (allowing copyright claimant to register as a single work a published work containing "copyrightable elements that are otherwise recognizable as self-contained works"). Ultimately, any conclusion on this issue is dicta in light of plaintiff's failure of proof.

Finally, section IV of the majority opinion makes reference to the following statement in the contracts between plaintiff and its advertisers: "Advertiser assumes sole responsibility for the protection of <u>its copyright</u> in any writing, illustration, design, map, photograph, or combination thereof included in said item of advertising." (Emphasis added.) Assuming, arguendo, that plaintiff made original contributions to the advertisements at issue, plaintiff would have been, at an absolute minimum, a joint author of those advertisements (along with those advertisers that also made original contributions to the advertisements), and would have had the right to assert its own interest in each advertisement, independent of what the advertiser chose to do.