FILED
United States Court of Appeals
Tenth Circuit

April 15, 2020

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARK BERG,

    Defendant - Appellant.

No. 18-3250
(D.C. No. 5:18-CR-40004-DDC-1)
(D. Kan.)

_____

**ORDER**
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, **LUCERO**, **MURPHY**, **HARTZ**, **HOLMES**, **MATHESON**, **BACHARACH**, **PHILLIPS**, McHUGH, **MORITZ**, **EID**, and **CARSON**, Circuit Judges.

_____

This matter is before the court on the Petition for Panel Rehearing and Rehearing En Banc filed by Appellant. Pursuant to Fed. R. App. P. 40, the petition for panel rehearing is granted in part to the extent of the modifications in the attached revised opinion. The court's January 23, 2020, opinion is withdrawn and replaced by the attached revised opinion which shall be filed as of today's date.

The petition for rehearing en banc and the attached revised opinion were transmitted to all of the judges of the court who are in regular active service. As no

member of the panel and no judge in regular active service on the court requested that the court be polled, the petition for rehearing en banc is denied. *See* Fed. R. App. P. 35(f).

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

MARK BERG,

      Defendant - Appellant.

No. 18-3250

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 5:18-CR-40004-DDC-1)**

---

Daniel T. Hansmeier, Appellate Chief (Melody Brannon, Federal Public Defender, and Carl Folsom, III, Assistant Federal Public Defender, with him on the briefs), Kansas City, Kansas, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Stephen R. McAllister, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-Appellee.

---

Before **LUCERO**, **MURPHY**, and **EID**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.    INTRODUCTION

Defendant-Appellant Mark Berg entered a conditional guilty plea to one count of possession of 100 kilograms or more of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  Berg appeals his conviction, asserting the district court erred by refusing to suppress evidence seized after a traffic stop.  *See* Fed. R. Crim. P. 11(a)(2) (providing that a defendant may, with the consent of the district court and the government, enter a conditional guilty plea but reserve the right to appeal an adverse determination of a pretrial motion).  Specifically, Berg asserts law enforcement lacked the reasonable suspicion of criminal activity necessary to detain him after the initial stop ended.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the denial of Berg's motion to suppress.  The totality of the circumstances, including facts indicating Berg was traveling in tandem with two escort vehicles and Berg's rental car was packed in a manner inconsistent with his assertion he was moving his possessions from one state to another, provided law enforcement with reasonable suspicion.

## II.    BACKGROUND

The following facts are either undisputed or were found by the district court and not challenged on appeal.  On December 9, 2017, Trooper Kyle Seiler

of the Kansas Highway Patrol was patrolling a section of Interstate 70 ("I-70") when he observed three vehicles traveling east. Trooper Seiler noticed two things about the vehicles that caught his attention: all three were traveling approximately ten miles per hour below the speed limit and none had a Kansas license plate. He testified it was uncommon to see three vehicles with out-of-state plates traveling in close proximity on I-70. His observations led Trooper Seiler to believe the vehicles were traveling together. He pulled onto the roadway and caught up with the trailing vehicle, a compact car with a California license plate. Trooper Seiler checked the vehicle's registration with his in-car computer and determined it was registered to a rental company in California.

As Trooper Seiler investigated the trailing vehicle, he noticed the two other vehicles, a red minivan and a light-colored pickup truck, speed up and began to travel at approximately the speed limit. He passed the compact car and began following the minivan. He determined the minivan was registered to a rental company in Arizona. While Trooper Seiler was following the minivan and running its registration, he observed it commit a traffic violation. Almost immediately after the minivan committed the infraction, Seiler saw the pickup truck accelerate to approximately ten miles per hour over the speed limit. Seiler ran the truck's license plates and learned the truck was registered to a private individual in California.

Trooper Seiler believed the compact car and the pickup truck were escort vehicles which, based on his training and experience, he knew are used as a tactic to divert attention from a vehicle transporting illegal drugs. He believed the pickup truck had tried to divert his attention from the minivan by speeding up when it noticed he was following the minivan.[1] He decided to stop the minivan based on his belief it was more likely the load vehicle because of its larger capacity. Seiler activated his lights and stopped the minivan.

As Trooper Seiler approached the minivan from the passenger side, he looked inside and noticed a large amount of cargo. He asked the driver, defendant Berg, if he was moving and Berg responded that he was moving from Las Vegas to Minnesota. While Trooper Seiler checked Berg's license and the rental agreement, he questioned Berg about his travel plans. Berg told Seiler he had been living in Las Vegas temporarily and was moving his possessions back to his home in Minnesota. Berg said his minivan was loaded with clothes and a television. Trooper Seiler testified he doubted the veracity of Berg's explanation for the contents of the minivan because, in his experience, the way Berg's items were packed was inconsistent with what he typically sees when interacting with motorists who are moving. Specifically, he stated:

---

[1] Trooper Seiler testified he believed the driver of the pickup truck was attempting to be pulled over for speeding.

Generally . . . when somebody's moving, you see household items that can't be packed into a box, appliances. You see boxes, suitcases, sure. It was the missing items. It was the fact that all of that cargo was consistent where it was—if it was a box, it was the same type of box. If it was a bag, you know, they were the large duffels that almost—you know, large suitcase-sized bags that I could see from my vantage. And they were just piled, stacked floor to ceiling, front to back, and they were crammed in there. That's not normally what I see when somebody's moving. I might see that in the back of a moving truck but not in a minivan.

As to Berg's route of travel, Trooper Seiler testified it was inconsistent with what he typically sees "with the normal motoring public" because Berg said he was in a hurry but he had spent time in Denver when he could have been on the road. Trooper Seiler admitted, however, that Berg's decision to break up his twenty-four-hour trip into four days was inconsistent with drug trafficking because most traffickers drive directly to their destination without stopping.

Based on his observations, Trooper Seiler believed Berg was engaged in drug trafficking. He returned Berg's documents but asked Berg if he would answer a few more questions. Berg did not expressly agree but he continued speaking to Trooper Seiler. During this additional questioning, Seiler asked Berg for consent to search his vehicle. When Berg refused,[2] Trooper Seiler told Berg he was being detained while a drug dog was called. The dog alerted to Berg's

---

[2]The fact Berg refused to give consent does not contribute to the reasonable suspicion analysis. *See United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997) (stating, "it should go without saying that consideration of" a motorist's refusal to consent "would violate the Fourth Amendment").

vehicle and it was searched by law enforcement. Officers found approximately 471 pounds of marijuana in Berg's minivan.

Berg moved to suppress all evidence obtained during the search of his minivan. The district court denied his motion. Berg then entered a conditional guilty plea permitting him to bring an appeal challenging "Whether Trooper Seiler had reasonable suspicion to detain [him] for a dog sniff."

## III. DISCUSSION

When this court reviews the denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless clearly erroneous.[3] *United States v. Karam*, 496 F.3d 1157, 1161 (10th Cir. 2007). The ultimate determination of the reasonableness of a search or seizure under the Fourth Amendment is subject to de novo review. *Id*. A traffic stop is constitutional if justified at its inception and if "the resulting detention was reasonably related in scope to the circumstances that justified the stop in the first place." *United States v. Valenzuela*, 494 F.3d

---

[3]Although Berg argues that viewing the evidence in the light most favorable to the government is inconsistent with the clearly erroneous standard applicable to a district court's factual findings, our precedent is clear on this point and "[w]e are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993); *see also United States v. Gaines*, 918 F.3d 793, 796 n.3 (10th Cir. 2019) (addressing the identical argument Berg makes here and similarly concluding "one panel of this court can't overrule another panel").

886, 888 (10th Cir. 2007). Berg does not challenge the validity of the initial stop, which Trooper Seiler testified was based on two traffic violations committed by Berg: following too closely and failing to maintain a lane. Berg, instead, argues Trooper Seiler unlawfully detained him from the time he refused to consent to the search until the drug dog alerted.[4]

An officer may detain a driver without consent once the initial purpose of a routine traffic stop has ended if, during the stop, "the officer develops an objectively reasonable and articulable suspicion that the driver is engaged in some illegal activity." *United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004) (quotation omitted). To determine whether an officer has a reasonable suspicion to continue the detention, we "look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotations omitted). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id*. (quotation omitted). Reasonable suspicion cannot be based on a "mere hunch," but it "need not rise to the level required for

---

[4]Once the canine alerted to Berg's vehicle, officers had probable cause to search it. *United States v. Rosborough*, 366 F.3d 1145, 1153 (10th Cir. 2004).

probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id*. at 274. Although facts consistent with innocent travel may support reasonable suspicion, some such facts provide no support for a particular driver's continued detention because they are "so innocent or susceptible to varying interpretations as to be innocuous." *United States v. White*, 584 F.3d 935, 950 (10th Cir. 2009) (quotation omitted). The government bears the burden of proving the reasonableness of the officer's suspicion. *United States v. Nichols*, 374 F.3d 959, 965 (10th Cir. 2004).

Here, the district court based its conclusion that Trooper Seiler had reasonable suspicion to detain Berg on (1) Seiler's belief the three vehicles were traveling together and were acting in concert in a manner consistent with drug trafficking and (2) Seiler's testimony that Berg's cargo was not consistent with his assertion he was moving from Las Vegas to Minnesota. The court concluded the other factors upon which the government relied were either not supported by the record or were too innocuous to contribute to reasonable suspicion. The district court identified those factors as: (1) Berg was traveling in a rental car; (2) Berg had trouble expressing whether he lived in Las Vegas and what he did there; (3) Berg was nervous because his breathing was shallow and quick throughout the encounter; (4) Berg took an indirect route of travel; and (5) Berg said he was in a rush to get home, but his statements about his travel timeline, rental agreement,

and travel route made that assertion implausible.[5] We agree that Trooper Seiler had reasonable suspicion to prolong the stop while he waited for the drug dog.

Trooper Seiler's suspicion that the three vehicles he observed on I-70 were traveling in tandem is supported by specific and articulable facts. Seiler testified it is uncommon to see three vehicles with out-of-state plates traveling in close proximity to each other on I-70. He also testified the three vehicles were all traveling at approximately the same speed: ten miles under the posted speed limit. From these facts, it was objectively reasonable for Trooper Seiler to infer that the three vehicles were somehow connected. Further, Seiler explained in detail why he suspected the vehicles were engaged in criminal activity. Specifically, he described how the compact car continued to drive ten miles per hour below the speed limit while the minivan and the pickup truck pulled ahead. Relying on his training and experience, Trooper Seiler interpreted this activity as an attempt by the compact car to draw his attention to the compact car and away from the other two vehicles. Trooper Seiler also observed the pickup truck accelerate to approximately ten miles per hour over the speed limit almost immediately after the minivan committed a traffic violation. From this, he inferred the pickup truck was intentionally diverting his attention from the minivan, which he had been

---

[5]Because of the district court's unchallenged factual findings, the government does not rely on Berg's alleged nervousness or his alleged confusion about his activities in Las Vegas.

following while he ran its registration. Trooper Seiler also explained he believed the minivan was the load vehicle because the other two vehicles did not have the necessary capacity. He testified he ruled the truck out as the load vehicle because it was registered to a private individual and, in his professional experience, he "rarely" saw large amounts of narcotics in privately owned vehicles.

Berg asserts all of the activity observed by Trooper Seiler is either consistent with innocent conduct or inconsistent with drug trafficking. For example, he argues Seiler first sighted the three vehicles close to a rest area and it is unremarkable that multiple vehicles with out-of-state plates would be traveling close together on the freeway immediately after a rest area. He also argues it was implausible for Trooper Seiler to believe that the compact car and the pickup truck were attempting to divert his attention by traveling under or over the speed limit. Instead, he asserts, if they were the escort vehicles, it would have been more rational for them, not the minivan, to commit the traffic infraction.

Even though Berg is correct that "common sense and ordinary experience are to be employed" in the reasonable suspicion analysis, this court defers "to a law enforcement officer's ability to distinguish between innocent and suspicious actions." *United States v. Hernandez*, 847 F.3d 1257, 1269 (10th Cir. 2017) (quotation omitted). And, here, Trooper Seiler fully detailed all the reasons why his training and experience caused him to suspect (1) the three vehicles were

-10-

traveling in tandem, (2) the behavior of the compact car and the truck were consistent with escort vehicles used in drug trafficking, and (3) the minivan was likely the load vehicle.

Trooper Seiler's reasonable suspicion of illegal activity was also supported by his observations about the cargo in Berg's minivan and how it was stacked. Seiler testified the minivan "was packed completely full, top to bottom, front to back, up into the front seats." On cross-examination, Trooper Seiler further explained that the uniformity in the size and type of boxes and the fact they were "crammed" into the minivan was inconsistent with what he "see[s] when people are moving."[6] Seiler's testimony that "the nature of the cargo [and] how it was packed" differed materially from what he typically observes in the vehicles of movers was unwavering. In its written order, the district court discussed Trooper Seiler's testimony in great detail concluding it was "credible evidence." Berg argues this court's holding in *United States v. Karam* precludes reliance on his cargo and the manner in which it was packed into the vehicle. *Karam*, however, involved a different situation than the one presented here.

_____

[6]Trooper Seiler also testified, based on his personal experience, that a person who had lived in Las Vegas for only two months would have fewer possessions than Berg had in his minivan. The district court did not rely on Seiler's subjective opinion in its reasonable-suspicion analysis and neither does this court.

-11-

In *Karam*, the government attempted to support an investigative detention with a trooper's testimony that neatly packaged boxes in the defendant's vehicle were consistent with drug trafficking. 496 F.3d at 1163. This court, however, noted that the government failed to provide "any objective basis for associating [the] boxes or [the] style of packaging with criminal activity." *Id*. The trooper's suspicion that the boxes contained illegal drugs was based only on "a single anecdote" he heard from another trooper. *Id*. Accordingly, we held that, considered in context, "the presence of new, neatly taped boxes in a vehicle contribute[d] nothing to the reasonable suspicion analysis." *Id*. Here, Trooper Seiler's suspicion was not based on anecdotal evidence or a belief that drugs are typically transported in the type of boxes and bags Berg had in his vehicle. Instead, he testified the nature of Berg's cargo was inconsistent with Berg's story that he was moving his possessions from Las Vegas to Minnesota. Trooper Seiler further testified that his suspicion was based on his experiences interacting with members of the public who are using vehicles to move their possessions. Thus, it had an objective basis and we conclude it contributed to Trooper Seiler's reasonable suspicion of criminal activity.

As to the other factors upon which the government relies, we agree with the district court that, in this case, they are too innocuous to support reasonable suspicion of criminal activity. The government has failed to provide any

objective basis to show why the facts Berg was traveling at night along a known drug corridor, using a slightly indirect route are significant in this case. Trooper Seiler admitted there was nothing about Berg's night-time travel "in and of itself" that raised his suspicions. He also testified that Berg could have reached his destination faster by traveling along I-80 instead of I-70, but he did not testify that the difference between the two routes was significant or that Berg's choice was highly unusual. As to the rental car, a trooper's knowledge that drug couriers frequently use rental cars may contribute to reasonable suspicion for extending a traffic stop. *See United States v. Williams*, 271 F.3d 1262, 1270 (10th Cir. 2001). But, Berg's use of a rental vehicle was not inconsistent with his description of his travel plans and Trooper Seiler did not identify anything about the rental car that was unusual in this matter. *See id*. (noting the defendant rented his vehicle in a city known to be a "staging area for marijuana" distribution and attempted to conceal that fact from law enforcement).

## IV. CONCLUSION

Under the totality of the circumstances and based on the district court's findings, we conclude specific and articulable facts existed to provide Trooper Seiler with reasonable suspicion that Berg was engaged in criminal activity. From these facts, Trooper Seiler rationally inferred that (1) Berg was traveling in tandem with two escort vehicles; and (2) Berg's claim he was moving personal

possessions with his rental car was likely untrue.  Thus, Berg's continued detention was not unconstitutional.

Because the district court did not err when it denied Berg's motion to suppress, the court's order is **affirmed**.