**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

COREY A. LOGAN, a/k/a Corey Antonio
Logan,

    Defendant - Appellant.

No. 20-3202
(D.C. No. 6:19-CR-10094-EFM-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BACHARACH**, **MORITZ**, and **EID**, Circuit Judges.

_____

Corey Logan was shot by an unknown assailant at his mobile home. Shortly

after first responders carried Logan outside, officers checked his residence for

additional victims of the shooting. No victims were found, but officers observed

hallucinogenic mushrooms and a marijuana pipe. Logan refused to consent to a

search, so the officers obtained a warrant to look for evidence of the shooting, the

mushrooms, and the marijuana. Indicted on two counts related to the mushrooms,

Logan moved to suppress the mushroom evidence. The district court denied Logan's

motion on the ground that the initial warrantless sweep for victims was justified by

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

exigent circumstances. Alternatively, the district court held that the inevitable discovery exception to the exclusionary rule applied because the officers would have uncovered the mushrooms while executing a warrant limited to the shooting. Logan entered a conditional guilty plea and appeals the suppression issue. Assuming without deciding that the warrantless search of Logan's home was not justified by exigency, we conclude that the district court's application of the inevitable discovery exception was not in error. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

On March 29, 2018, at around two o'clock in the morning, there was repeated knocking at the front door of Corey Logan's mobile home in Wichita, Kansas. Before Logan could answer the door, an unknown assailant opened fire and fled the scene. Also in the home was Samantha Case, who called the police once she realized Logan had been shot.

At 2:19 a.m., Wichita Police Officer Steven McKenna arrived. He found Case in the doorway calling for help and followed her to the mobile home's south bedroom, where Logan was on the floor with a gunshot wound to his left side. At 2:22 a.m., medical personnel reached the bedroom and started evacuating Logan to a hospital. Meanwhile, more police officers arrived outside. These officers spotted five bullet holes on the mobile home's exterior, just north of the front door, plus corresponding shell casings, which suggested that multiple bullets entered the home's north bedroom. Officers also found blood on the floor near the front door.

2

Officer McKenna requested Logan's permission to search the home. Logan refused. Officers reentered the home anyway, looking for more victims of the shooting. The officers conducting this sweep found neither victims nor evidence of the shooter's identity—but they did find Logan's hallucinogenic mushrooms. When Wichita Police Officer Cale Carson opened the interior door to the north bedroom, he immediately recognized a psilocybin grow operation; he also spotted a marijuana pipe in the living room. Having found no more victims of the shooting, the officers left the home, secured it, and obtained a search warrant from a county judge. The warrant permitted law enforcement to reenter Logan's home to investigate the shooting, the mushrooms, and the marijuana.

In June 2019, a federal grand jury in the District of Kansas returned a two-count indictment charging Logan under 21 U.S.C. § 841 with manufacturing a controlled substance and possessing with intent to distribute a controlled substance. Both counts involved the hallucinogenic mushrooms discovered by police after Logan was shot. Logan moved to suppress the evidence and the district court held a suppression hearing.

The court denied Logan's motion in February 2020. The court held that the search that first discovered the mushrooms, although warrantless, was justified by exigent circumstances because "the officers had an objectively reasonable basis to believe that another victim could have been in the residence." R. Vol. I at 56. Alternatively, the court held that the inevitable discovery exception to the exclusionary rule applied because, even if the sweep for victims had never occurred,

3

the government had demonstrated by a preponderance of the evidence that "investigators would have nevertheless discovered evidence of the mushroom grow operation while executing a warrant to discover further evidence of the shooting." *Id.* at 58.

With the motion to suppress denied, Logan entered a conditional guilty plea to the manufacturing count and the government dismissed the possession count. In the plea agreement, Logan reserved the right to appeal the suppression issue. The district court sentenced Logan to five years' probation. Logan timely appealed.

## II.

On appeal, Logan argues that the district court erred by denying his motion to suppress the mushroom evidence. He challenges both the district court's finding of exigent circumstances and its alternative application of the inevitable discovery doctrine. Assuming without deciding that the initial search was not justified by exigency, we affirm the district court's application of inevitable discovery.

### a.

The Fourth Amendment "protects the people from unreasonable searches and seizures of 'their persons, houses, papers, and effects.'" *Soldal v. Cook Cty.*, 506 U.S. 56, 62 (1992) (quoting U.S. Const. amend. IV). A warrantless search of the home is generally presumed unreasonable. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Here, the district court found that an exigency—specifically, the need to check Logan's mobile home for victims of the shooting—rendered the initial search

reasonable. *See id.* (discussing exigency exception to presumption that warrantless home searches are unreasonable).

The "principal judicial remedy to deter Fourth Amendment violations" is the exclusionary rule, which "often requires trial courts to exclude unlawfully seized evidence in a criminal trial." *Utah v. Strieff*, 579 U.S. 232, 237 (2016). Here, Logan invoked the Fourth Amendment exclusionary rule in moving to suppress the mushroom evidence on the ground that the initial search of his mobile home was unlawful. But the exclusionary rule is subject to several exceptions. *See, e.g.*, *Murray v. United States*, 487 U.S. 533, 537 (1988) (independent source); *United States v. Leon*, 468 U.S. 897, 913 (1984) (good faith). Here, the district court invoked the inevitable discovery exception to the exclusionary rule as an alternative ground for denying the motion to suppress.

Courts apply the inevitable discovery exception where "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). If so, the Supreme Court has explained, "the deterrence rationale" underlying the exclusionary rule "has so little basis that the evidence should be received." *Id.* The inevitable discovery inquiry is premised on "probability," specifically "how likely it is that a warrant would have been issued and that the evidence would have been found pursuant to the warrant." *United States v. Souza*, 223 F.3d 1197, 1204 (10th Cir. 2000). "What makes a discovery 'inevitable' is not probable cause alone . . . but probable cause plus a chain of events that would have

led to a warrant (or another justification) independent of the search." *Id.* (alteration

omitted) (quoting *United States v. Brown*, 64 F.3d 1083, 1085 (7th Cir. 1995)).

"[I]nevitable discovery involves no speculative elements but focuses on demonstrated

historical facts capable of ready verification." *United States v. Shrum*, 908 F.3d

1219, 1235 (10th Cir. 2018) (quoting *Nix*, 467 U.S. at 444 n.5).

In the past, we have found several factors useful in navigating the inevitable

discovery exception.  These include: (1) "the extent to which the warrant process has

been completed at the time those seeking the warrant learn of the search"; (2) "the

strength of the showing of probable cause at the time the search occurred";

(3) "whether a warrant ultimately was obtained, albeit after the illegal entry"; and

(4) "evidence that law enforcement agents 'jumped the gun' because they lacked

confidence in their showing of probable cause and wanted to force the issue by

creating a fait accompli." *United States v. Cunningham*, 413 F.3d 1199, 1203–04

(10th Cir. 2005) (quoting *Souza*, 223 F.3d at 1204).

We will assume without deciding that the initial warrantless search of Logan's

mobile home was not justified by exigent circumstances and focus instead on the

district court's finding that the inevitable discovery exception to the exclusionary

rule applies.  "When this court reviews the denial of a motion to suppress, we view

the evidence in the light most favorable to the government and accept the district

court's factual findings unless clearly erroneous." *United States v. Berg*, 956 F.3d

1213, 1216 (10th Cir. 2020).  When a party appeals a district court's inevitable

discovery analysis, "[w]e review the district court's factual determinations for clear

6

error and its ultimate Fourth Amendment conclusions de novo." *United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014).

We agree with the government that the district court's finding that police officers would have found the mushroom evidence while executing a lawful warrant is a factual finding that we review for clear error. *See United States v. Sanchez*, 608 F.3d 685, 692 (10th Cir. 2010). "Findings of fact are clearly erroneous when they are unsupported in the record, or if after our review of the record we have the definite and firm conviction that a mistake has been made." *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *TransWestern Publ'g Co. LP v. Multimedia Mktg. Assocs., Inc.*, 133 F.3d 773, 775 (10th Cir. 1998)).

**b.**

On appeal, Logan argues that the district court erred by only analyzing whether probable cause supported a warrant application and ignoring whether the mushroom evidence would have been discovered without the initial sweep. He contends that the government "made no effort to establish that the evidence would still have been in the same location to be discovered at the time the warrant was executed." Aplt. Br. at 33. He emphasizes that the warrant process had not begun when police officers checked the home for additional victims, and further argues that the government did not offer any evidence about the investigation's timeline or whether the home was secured. Logan also suggests that the district court's decision, if affirmed, "impermissibly creates a crime scene exception for inevitable discovery." Aplt. Br. at 34.

7

The government responds that the district court's finding that law enforcement inevitably would have discovered the mushroom evidence was not clearly erroneous. The same is true, in the government's view, of Logan's suggestion that the mushrooms may not have remained in the home while the government sought a warrant, which the government would ask us to review for plain error. Additionally, the government contends that the district court did not focus solely on probable cause and that it did not create any exception for crime scenes.

### c.

The factual findings that supported the district court's application of the inevitable discovery exception were not clearly erroneous. First, the district court did not clearly err in finding that officers would have obtained a valid warrant to search Logan's mobile home, even if they had not observed the mushrooms while looking for additional victims of the shooting. Second, the district court did not clearly err in implicitly finding that officers executing such a warrant would have found the mushroom evidence. Finally, we reject Logan's argument about a so-called crime scene exception to the Fourth Amendment.

The district court did not clearly err by finding that, "[e]xtracting the evidence of a mushroom grow operation from the search warrant, . . . investigators would have nevertheless . . . execut[ed] a warrant to discover further evidence of the shooting." R. Vol. I at 58. Testimony at the suppression hearing provided a reasonable basis for that finding. Officer Carson testified that after checking the mobile home for additional victims, he "knew that there was going to be a warrant regardless . . . for

evidentiary purposes in relation to the shooting." R. Vol. III at 63. Asked, hypothetically, whether law enforcement would have still sought a warrant without finding the mushroom evidence, he responded in the affirmative, indicating that officers would have been looking for "any evidence" of the shooting. *Id.* The district court did not commit clear error by crediting Officer Carson's uncontradicted, sworn testimony, and concluding that law enforcement would have sought a warrant to search Logan's residence even if the mushrooms had not been found.

The district court likewise did not commit clear error by finding that officers would have obtained and executed the warrant they would have sought. That is so even though the warrant process had not started when officers checked the mobile home for additional victims. *See Christy*, 739 F.3d at 543 ("[A]n effort to obtain a warrant is but one factor of the inevitable discovery doctrine in this circuit."). After all, a warrant—albeit one reflecting a warrant application that also covered the mushrooms and marijuana—was obtained and executed within a few hours of the shooting. Even without the mushroom and marijuana component of the warrant, it was essentially a certainty that evidence of the shooting would be found if the mobile home were searched. *See Cunningham*, 413 F.3d at 1204. It also does not appear that "law enforcement agents 'jumped the gun' because they lacked confidence in their showing of probable cause." *Id.* (quoting *Souza*, 223 F.3d at 1204). Rather, they pursued a warrant on multiple grounds, and to the extent we are assuming two of those grounds were invalid, the district court still had adequate support for its conclusion that a warrant would have issued in due course with respect to solely the

9

shooting. The court's finding that law enforcement would have obtained and executed a valid warrant to search the mobile home for evidence of the shooting was not clearly erroneous.

Before turning to the second factual finding required to apply the inevitable discovery exception here—that the evidence at issue would have been found pursuant to the lawful warrant—we reject Logan's legal argument that the district court failed to find that the mushroom evidence would have still been found in the north bedroom if officers executed a warrant limited to the shooting. We review this argument de novo. *See Christy*, 739 F.3d at 540. It is true, as Logan contends, that probable cause alone is insufficient to apply inevitable discovery. *See Souza*, 223 F.3d at 1204. However, the district court covered more ground in its findings than Logan suggests. The district court stated that, "while executing a warrant to discover further evidence of the shooting," the officers "would have nevertheless discovered evidence of the mushroom grow operation." R. Vol. I at 58. That statement contained the very factual finding that inevitable discovery requires—that the evidence would have been found on a valid warrant. Logan's legal argument therefore fails because the district court made the findings that it needed to make to hold that the inevitable discovery exception applied. Although the district court did not make an explicit finding that the mushroom evidence would have been in the same spot, at the same time, if a valid warrant were executed, we think that finding is implicit within the factual finding that we have excerpted. That only leaves the

question whether the finding had enough support in the record to withstand clear error review. It did.

The district court did not commit clear error by finding that the mushroom evidence likely would have been found if officers executed a warrant limited to the shooting. Unlike in some inevitable discovery cases, this district court had detailed evidence of a warrant execution process that would have been remarkably similar, in both scope and timing, to the process associated with the hypothetical, more limited warrant that, as we have explained, the district court did not clearly err in finding law enforcement would have sought, obtained, and executed. As far as scope, officers testified at the suppression hearing that bullet holes and shell casings indicated that evidence of the shooting would be found in the north bedroom. A hypothetical warrant would have thus led officers into that bedroom, where they would have located the mushroom evidence.[1] As far as timing, nothing suggests a warrant limited to evidence of the shooting would have been obtained on a slower timeline. The comparable warrant process in this case provided the district court with "demonstrated historical facts capable of ready verification," *Shrum*, 908 F.3d at 1235 (quoting *Nix*, 467 U.S. at 444 n.5), that directly supported the court's finding that the mushroom evidence would have inevitably been located by police.

---

[1] Although the mushrooms would fall outside the scope of the hypothetical search warrant, the plain view doctrine would likely apply. *See United States v. Muhtorov*, 20 F.4th 558, 597–98 (10th Cir. 2021).

The district court also did not commit clear error by its related, implicit finding that the mushrooms would not have been moved by the time law enforcement officers executing a lawful warrant reached the north bedroom.[2] Testimony at the suppression hearing supported the district court's finding that law enforcement officers "secured" the scene while waiting for the warrant to issue. R. Vol. I at 53. Specifically, Officer McKenna testified that while Logan was being treated for his wounds, other officers remained at the mobile home. Officer Carson also testified that it would be "standard procedure" to stand over shell casings "to preserve the evidence." R. Vol. III at 58. When Officer Carson arrived at Logan's mobile home, that is exactly what officers were doing. Notably, this testimony suggests that officers were motivated to secure the scene because of the shooting, not because of the mushrooms. Moreover, video evidence showed police officers preventing individuals unrelated to the investigation from approaching the mobile home. The district court did not clearly err by finding that the mushroom evidence would not have been moved in a hypothetical timeline where officers were executing a warrant to search for evidence of the shooting.

Finally, we are unpersuaded by Logan's argument that affirming the inevitable discovery issue would create a crime scene exception to the Fourth Amendment. Here, the district court did not apply the inevitable discovery exception "just because

---

[2] The government suggests that Logan forfeited this specific argument, so we should review for plain error. Logan disagrees and seeks de novo review. We need not determine which position prevails because the argument fails under any standard.

12

a crime had occurred," as Logan suggests on appeal. Aplt. Br. at 34. Instead, the district court's inevitable discovery holding was based on factual findings that law enforcement would have obtained a valid warrant and uncovered the mushroom evidence while executing that warrant.

In sum, it is undisputed that law enforcement officers executing a warrant to search Logan's mobile home for mushroom, marijuana, and shooting evidence found the mushroom evidence in the north bedroom. The district court thus had abundant factual support, rooted in the real-life execution of essentially the same warrant, for its finding that officers executing a hypothetical warrant to search the mobile home for solely shooting evidence would have done so on the same timeline and found the mushroom evidence in the north bedroom. The court did not err by applying the inevitable discovery exception.

### III.

We AFFIRM the district court's denial of Logan's motion to suppress.

Entered for the Court

Allison H. Eid
Circuit Judge