FILED
United States Court of Appeals
Tenth Circuit

January 3, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

EDWARD CHRISTY,

      Defendant - Appellant.

No. 12-2127

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:10-CR-01534-JB-1)**

Lee P. McMillian of the Law Offices of Lee McMillian, South Houston, Texas, for Defendant - Appellant.

Laura Fashing, Assistant United States Attorney (and Kenneth J. Gonzales, United States Attorney, on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

Before **KELLY**, **HARTZ**, and **MATHESON**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendant-Appellant Edward Christy appeals from an order of the district court granting in part the government's motion to reconsider and denying Mr. Christy's motion to suppress on the basis of the inevitable discovery doctrine.

United States v. Christy, 810 F. Supp.2d 1219 (D.N.M. 2011).  The district court initially granted the motion to suppress.  United States v. Christy, 785 F. Supp.2d 1004 (D.N.M. 2011).[1]  Exercising jurisdiction under 28 U.S.C. § 1291, we hold that the district court did not abuse its discretion in granting the motion to reconsider and correctly applied the inevitable discovery doctrine.  We therefore affirm.


Background

This case concerns Mr. Christy's relationship with a sixteen-year-old girl ("K.Y.").  Mr. Christy met K.Y. on AgeMatch.com, a dating website, Aplt. App. 431, and the two exchanged sexually explicit emails and photographs, id. at 417-18.  Believing that her father was abusive, Mr. Christy arranged to pick K.Y. up from her home in Westminster, California, and bring her to his home in Albuquerque, which he did.  Id. at 431.

On November 8, 2009, K.Y.'s parents reported her missing.  Id. at 417. K.Y's father gained access to her email account and found sexually explicit exchanges with Mr. Christy.  Id. at 417-18.  FBI Task Force Officers Carvo and Fletes investigated K.Y.'s disappearance.  Id. at 418.  Using K.Y.'s telephone records, they found that she received three calls from Mr. Christy around the time

---

[1] The district court subsequently issued a slightly amended order which we rely upon.  Aplt. App. 415.

of her disappearance and obtained Mr. Christy's address and other information from his cellular provider.  Id. at 418-19.  Using Mr. Christy's cell phone usage data, the agents determined that he traveled to California and back to Albuquerque.  Id. at 419-20.

On November 9, 2009, the officers contacted the Bernalillo County Sheriff's Office ("BCSO") and told them what they had found.  Id. at 421.  As a result, BCSO deputies Littlefield and McKinney were dispatched to Mr. Christy's residence to conduct a welfare check on K.Y.  Id. at 421-22.  One of the deputies walked to the rear of the house and noticed a crack in the blinds covering a window.  Id. at 423.  He peered through the window and saw K.Y. wearing a brassiere and underwear, smiling and holding a rope.  Id. at 423-24.  Concerned for K.Y.'s safety, the deputy asked his sergeant for permission to force entry into the house and for backup.  Id. at 424.  He looked again through the window and saw K.Y. no longer wearing a brassiere and bound by the rope, and observed camera flashes.  Id. at 425.

When backup arrived, the deputies forced entry into the house and arrested Mr. Christy.  Id. at 425-27.  They conducted a protective sweep and found pornographic materials.  Id. at 426.  Mr. Christy was given Miranda warnings and told the deputies he had picked K.Y. up from California.  Id. at 427.  He was taken to a law enforcement center and interviewed by Detective Proctor ("detective").  Id. at 428, 430.  Mr. Christy told the detective about his

relationship with K.Y., how he drove her from California to Albuquerque, and that they had sex.  Id. at 431.

Based in part on the BCSO deputies' observations at Mr. Christy's residence and Mr. Christy's post-arrest statements, the detective prepared and obtained warrants to search Mr. Christy's residence, cell phone, vehicle, computer, and person.  Id. at 433-435.  Pursuant to the warrants, BCSO deputies obtained used condoms, sexual devices, and computer files later determined to contain child pornography, including pictures of K.Y.  Id. at 435-36.

In May 2010, Mr. Christy was indicted by a federal grand jury.  Id. at 436.  He was charged with one count of transportation with intent to engage in criminal sexual activity, 18 U.S.C. § 2423(a), and three counts of possession of matter containing visual depictions of minors engaged in sexually explicit conduct, 18 U.S.C. §§ 2252(a)(4)(b), (b)(2), & 2256.  App. 18-20.[2]  He filed a motion to suppress all evidence obtained as a result of the warrantless search of his house, including his statements to the detective and all evidence obtained pursuant to the search warrants.  Id. at 437.  The district court found that the deputies violated the Fourth Amendment when they entered Mr. Christy's house without a warrant, and granted the motion to suppress.  Christy, 785 F. Supp. 2d at 1045, 1054.

The government then filed a motion to reconsider, Aplt. App. 495, which

[2]  A grand jury later returned a superseding indictment charging the same counts.  App. 436.

- 4 -

the court granted to consider (inter alia) whether the illegally seized evidence was nonetheless admissible under the inevitable discovery doctrine. Christy, 810 F. Supp. 2d at 1222-23. The court determined that, absent the illegal search, Officer Carvo would have legally obtained a warrant and discovered the evidence. Id. at 1278-82. Thus, the court denied Mr. Christy's motion to suppress. Id. at 1282.

Mr. Christy then entered into a plea agreement to a two-count information charging him with (1) coercion and enticement of a person to travel in interstate commerce to engage in sexual activity for which any person could be charged with a criminal offense, 18 U.S.C. § 2422(a), and (2) possession of matter containing visual depictions of minors engaged in sexually explicit conduct, 18 U.S.C. §§ 2252(a)(4)(B), (b)(2), & 2256. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), Mr. Christy was sentenced to two concurrent terms of 108 months and the district court imposed lifetime supervised release. Aplt. App. 1230-1236; United States v. Christy, 888 F. Supp.2d 1107, 1168 (D.N.M. 2012).[3] Mr. Christy timely appealed.

## Discussion

Mr. Christy argues that the district court abused its discretion in granting the government's motion to reconsider and challenges the court's application of

---

[3] Although Mr. Christy challenged the lifetime sentence of supervised release in his opening brief, he abandoned that claim in his reply brief. See Aplt. Rep. Br. 4.

the inevitable discovery doctrine. We discuss each point in turn.

A.    Motion to Reconsider

We review a district court's decision to reconsider a prior ruling for abuse of discretion. United States v. Randall, 666 F.3d 1238, 1241 (10th Cir. 2011). Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them. Id. at 1241-42; see United States v. Healy, 376 U.S. 75, 78 (1964). A district court should have the opportunity to correct alleged errors in its dispositions. See United States v. Dieter, 429 U.S. 6, 8 (1976).

A motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law. Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). Specific grounds include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Id. A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier. Id.

Mr. Christy argues that the district court abused its discretion in granting the motion to reconsider because the government had ample opportunity to brief and argue its inevitable discovery theories during the initial suppression hearings. Aplt. Br. 14. The government in fact raised inevitable discovery in its brief in response to the motion to suppress, Aplt. App. 39, its brief in response to the

amended motion to suppress, Aplee. Supp. App. 14, 20, 28, and during a hearing on the suppression motion, Aplt. App. 81. But the district court did not rule on the inevitable discovery issue in its order granting the suppression motion. See Christy, 810 F. Supp. 2d at 1246.

Considering this, the district court acted well within its discretion in granting the motion to reconsider (at least as to inevitable discovery) in order to rule on an issue it mistakenly overlooked. The district court was plainly aware of the appropriate grounds for a motion to reconsider. Id. at 1250. Given its extensive treatment of inevitable discovery in its order granting reconsideration, there is little doubt that the court either misapprehended the government's original position, or else was in clear error in failing to address it at all. We defer to the district court's discretion to correct its mistakes.

B. Inevitable Discovery

Subject to a few exceptions, evidence obtained in violation of the Fourth Amendment will be suppressed under the exclusionary rule; the inevitable discovery doctrine is one such exception. United States v. Cunningham, 413 F.3d 1199, 1203 (10th Cir. 2005). Under it, illegally obtained evidence may be admitted if it "ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 444 (1984). The government bears the burden of proving by a preponderance of the evidence that the evidence would have been discovered without the Fourth Amendment violation. Cunningham,

413 F.3d at 1203.

Mr. Christy makes three arguments as to why the inevitable discovery doctrine does not apply: (1) there was no "independent investigation" that would have lawfully discovered the evidence; (2) the court misapplied the factors set forth in United States v. Souza, 223 F.3d 1197 (10th Cir. 2000); and (3) the officers in this case took no preliminary steps to obtain a warrant before conducting the illegal search.

We review the district court's factual determinations for clear error and its ultimate Fourth Amendment conclusions de novo. Cunningham, 413 F.3d at 1203.

1.      Independent Investigation

Mr. Christy argues that the district court failed to require an independent investigation before applying the inevitable discovery doctrine. Aplt. Br. 17-21. He asserts that our case law requires a second investigation, independent of the one that resulted in the illegal search, that would have legally discovered the evidence in question. Id. at 18-20. This case, he continues, involves only one investigation—the joint investigation of the Westminster police, FBI, and BCSO. Id. at 20.

We cannot agree with Mr. Christy's interpretation of our inevitable discovery cases. We have said that the doctrine "permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered

it." Cunningham, 413 F.3d at 1203 (quoting United States v. Owens, 782 F.2d 146, 152 (10th Cir. 1986)) (internal quotation marks omitted).  In Owens, we relied on "the necessity of an *independent* investigation" in refusing to apply inevitable discovery to a warrantless search of a closed container in the defendant's hotel room.  782 F.2d at 152.  While we noted that the illegal search "tainted the only police investigation that was ongoing," id., we have since held that "neither the majority opinion in Nix nor our cases limit the inevitable discovery exception to lines of investigation that were already underway."  United States v. Larsen,127 F.3d 984, 987 (10th Cir. 1997).

In Cunningham and Souza we applied inevitable discovery to situations like the one here—where there was "one line of investigation that would have led inevitably to the obtaining of a search warrant by independent lawful means but was halted prematurely by a search subsequently contended to be illegal." Cunningham, 413 F.3d at 1204 n.1.  In Cunningham, police searched the defendant's home after getting his consent.  Id. at 1202.  The defendant later contested the search, claiming his consent was coerced.  Id.  We held that even if the search was illegal, the evidence was admissible because the officers "would have obtained a search warrant" if the search had not occurred.  Id. at 1205.  In Souza, police illegally opened a UPS package that contained drugs.  223 F.3d at 1200, 1202.  We held the evidence admissible under inevitable discovery because the officers "would have obtained a warrant" had the illegal search not occurred.

Id. at 1206.  Thus, our case law does not require a second investigation when the first (and only) investigation would inevitably have discovered the contested evidence by lawful means.

This comports with the Supreme Court's treatment of inevitable discovery. When the Court approved of the doctrine in Nix, it did not limit its application to scenarios with a second, independent investigation, even though the facts of that case involved one.  See Nix, 467 U.S. at 434-36.  The Court instructed only that evidence is admissible if it would be discovered "by lawful means" or "without reference to the police error or misconduct."  Id. at 444, 448.  And in Murray v. United States, the Court applied the related independent source rule to admit evidence discovered during an illegal search but subsequently seized by the same officers pursuant to a valid warrant.  487 U.S. 533, 541-44 (1988).  The determinative factor in that case was that the warrant and eventual seizure were not tainted by the initial illegality—not that the evidence was discovered by a second, unrelated investigation.  See id. at 542.

Thus, lest there be any doubt, we reaffirm the notion that inevitable discovery requires only that the lawful means of discovery be "independent of the constitutional violation," Larsen, 127 F.3d at 987, and conclude that a second investigation is not required.  In this case, and as discussed more fully below, Officer Carvo had sufficient probable cause to obtain a warrant based on the information he had before the BCSO deputies searched Mr. Christy's residence.

- 10 -

The warrant he would have inevitably obtained would thus have been independent of the constitutional violation.

2.     The Souza Factors

Next, Mr. Christy argues that the district court misapplied the factors set forth in Souza in finding that the evidence would have been inevitably discovered. Aplt. Br. 21-26. In cases like this one, where the theory of inevitable discovery is that a warrant would have been obtained but for the illegal search, the district court must determine "how likely it is that a warrant would have been issued and that the evidence would have been found pursuant to the warrant." Souza, 223 F.3d at 1204. In Souza, we adopted four factors from the Second Circuit to aid in this determination:

> 1) the extent to which the warrant process has been completed at the time those seeking the warrant learn of the search; 2) the strength of the showing of probable cause at the time the search occurred; 3) whether a warrant ultimately was obtained, albeit after the illegal entry; and 4) evidence that law enforcement agents 'jumped the gun' because they lacked confidence in their showing of probable cause and wanted to force the issue by creating a fait accompli.

Id. (quoting United States v. Cabassa, 62 F.3d 470, 473-74, 473 n.2 (2d. Cir. 1995) (internal quotation marks and citations omitted)). Factors (1) and (3) are of particular importance. Id. Ultimately, the court must examine each contingency that would need to have been resolved in favor of the government and apply the inevitable discovery doctrine "only when it has a high level of confidence" that

- 11 -

the warrant would have been issued and the evidence obtained.  Id. at 1205.

Mr. Christy challenges the court's treatment of factors (2) and (4)—the strength of probable cause and whether the officers "jumped the gun" to sidestep the warrant requirement.  Aplt. Br. 24, 26.  Factors (1) and (3) are undisputed—the government concedes that the officers took no steps to obtain a warrant before the search, Aplee. Br. 32, and Mr. Christy concedes that a warrant was ultimately obtained, albeit after the illegal entry, Aplt. Br. 24.

As to factor (2), the district court concluded that Officer Carvo had strong probable cause that Mr. Christy committed the California crime of unlawful sexual intercourse and the federal crime of coercion or enticement.  Christy, 810 F. Supp. 2d at 1276-78.  The California crime consists of sexual intercourse with a minor under the age of 18, Cal. Penal Code § 261.5(a), (c), and the federal crime consists of persuading or enticing someone to cross state lines to engage in any sexual activity for which any person can be charged with a criminal offense, 18 U.S.C. § 2422(a).

The district court found that Officer Carvo knew that K.Y. was a minor, there was a large age difference between her and Mr. Christy, the two exchanged sexually explicit pictures, and that Mr. Christy traveled across state lines with K.Y.  Christy, 810 F. Supp. 2d at 1277-78.  Given those factual findings, it is a reasonable inference that a sexual relationship existed between Mr. Christy and K.Y.  Officer Carvo also knew that K.Y. was potentially suicidal, had left her

- 12 -

depression medication behind, and ran away from home with Mr. Christy. Aplt. App. 166. Based on that knowledge, Officer Carvo's belief that K.Y. was at risk for sexual victimization and assault was reasonable. Thus, Officer Carvo had reasonable grounds to believe that Mr. Christy engaged in sexual activity in violation of California law and coerced or enticed K.Y. to travel across state lines to engage in criminal sexual activity in violation of federal law. See Maryland v. Pringle, 540 U.S. 366, 371 (2003). The district court was correct in weighing this factor in favor of applying inevitable discovery.

Next, Mr. Christy argues that the deputies "jumped the gun" by forcing entry into his home due to their lack of confidence about probable cause. Aplt. Br. 26. Yet as the district court found, no evidence supports the theory that the deputies forced entry for that reason. Christy, 810 F. Supp. 2d at 1279. Instead, the deputies forced entry because they believed K.Y. was in danger. Aplt. App. 423-25. Mr. Christy argues that the search was not in fact justified by exigent circumstances and points to the district court's conclusion that it was not. Aplt. Br. 26. But that is beside the point. The record fully supports the reasonableness of the deputies' assessment of danger. The district court was correct in weighing this factor in favor of the government. Thus, the district court did not err in applying the Souza factors.

3.     Steps to Obtain a Warrant

Finally, Mr. Christy argues that inevitable discovery is inappropriate

- 13 -

because the officers in this case took no steps to obtain a warrant before the illegal search.  Aplt. Rep. Br. 13.  He asserts that evidence of steps to obtain a warrant—the first <u>Souza</u> factor—is a prerequisite to applying inevitable discovery rather than a factor for the court to consider.  <u>Id.</u> at 13-14.  We disagree.

While we have referred to preliminary steps to obtain a warrant as a "prerequisite," <u>Souza</u>, 223 F.3d at 1205, and a "requirement," <u>Cunningham</u>, 413 F.3d at 1204 n.1, these descriptions are likely dicta.  <u>See</u> <u>United States v. Sanders</u>, 43 F. App'x 249, 254 n.2 (10th Cir. 2002) (unpublished).[4]  A close reading of <u>Souza</u> and its underpinnings indicates that an effort to obtain a warrant is but one factor of the inevitable discovery doctrine in this circuit.

The ultimate question when applying inevitable discovery to factual situations like the one here is "how likely it is that a warrant would have been issued" and the evidence found.  <u>Souza</u>, 223 F.3d at 1204.  In <u>Souza</u>, we stated that inevitable discovery does not apply when the government's only argument is that it had probable cause at the time of the search, but "may" apply where police have "taken steps in an attempt to obtain a search warrant."  <u>Id.</u> at 1203.  We relied upon the Fourth Circuit in stating that the government must show that "the police would have obtained the necessary warrant absent the illegal search," and that this "*might* include proof that . . . the police . . . took steps to obtain a

---

[4]  We cite this case only for its persuasive value.  Fed. R. App. P. 32.1; 10th Cir. R. 32.1

warrant" before the search.  Id. at 1203-04 (quoting United States v. Allen, 159

F.3d 832, 841 (4th Cir. 1998)) (emphasis added).  We quoted the Seventh Circuit

in stating that inevitable discovery requires "probable cause plus a chain of events

that would have led to a warrant."  Id. at 1204 (quoting United States v. Brown,

64 F.3d 1083, 1085 (7th Cir.1995)).

Thus, evidence of steps to obtain a warrant is one way the government

might meet its burden of showing that a warrant would have ultimately been

obtained, but not the only way.[5]  The district court's conclusion that Officer

Carvo would have successfully obtained a warrant independent of the illegal

search is supported by the record, even though no steps to obtain a warrant had

been initiated at the time of the search.  Officer Carvo had strong probable cause

to suspect Mr. Christy of at least two crimes, and was cross-designated to obtain

---

[5] We are mindful of the concern of other courts that applying inevitable discovery where officers have probable cause but simply choose not to obtain a warrant would do harm to the Fourth Amendment's warrant requirement.  See, e.g., United States v. Mejia, 69 F.3d 309, 320 (9th Cir. 1995); United States v. Johnson, 22 F.3d 674, 683 (6th Cir. 1994).  But we reiterate that probable cause on its own is not enough; inevitable discovery requires that the district court have a "high level of confidence" that the warrant would have—not could have—been issued, Souza, 223 F.3d at 1205, and the government bears the burden of proof, id. at 1203.  The district courts thus stand as gatekeeper, preventing officers from foregoing the warrant process entirely by always relying on inevitable discovery. And to the extent officers might do that, requiring the government to always show preliminary steps to obtain a warrant is not the cure.  Officers may easily initiate the warrant process with no intention of seeing it through, knowing they have satisfied a prerequisite to inevitable discovery, and conduct a search before the warrant is issued or denied.  The better course is to continue to give discretion to the district courts to consider this a factor of "great importance" in the inevitability determination.  See id. at 1204.

state and federal search warrants.  He would have been authorized to obtain a federal search warrant for the California crime if evidence of it was in New Mexico, <u>Christy</u>, 810 F. Supp. 2d at 1233; <u>see also</u> 2 LaFave et al., *Search & Seizure: A Treatise on the Fourth Amendment* § 3.1(b) n.29 (5th ed.), and the district court credited testimony that officers had easily obtained similar warrants in the past, <u>id.</u> at 1281.  Thus, Officer Carvo would in fact have obtained a search warrant, and the evidence in question would have been discovered legally, had the illegal search not discovered it first.

AFFIRMED.