FILED
United States Court of Appeals
Tenth Circuit

December 6, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SONIA GARIBALDI-BRAVO,

Defendant - Appellant.

No. 19-2036
(D.C. No. 1:17-CR-02943-WJ-5)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, **McKAY**, and **BACHARACH**, Circuit Judges.

Appellant Sonia Garibaldi-Bravo appeals the district court's decision to reconsider its earlier grant of safety-valve relief and instead impose the mandatory minimum sentence of ten years of imprisonment.

Appellant pled guilty to distributing more than 500 grams of methamphetamine, which carries a ten-year mandatory minimum sentence. *See* 21 U.S.C. § 841(a)(1) and (b)(1)(A). Appellant sought safety-valve relief under 18

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

U.S.C. § 3553(f), arguing that her sentence should be based on the advisory guideline range of 63 to 78 months rather than the statutory minimum because she was a first-time offender and otherwise met all of the requirements of § 3553(f). The government opposed this request, asserting that Appellant failed to satisfy the fifth requirement for safety-valve relief because she had not "truthfully provided to the Government all information and evidence [she had] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). Among other things, the government argued that Appellant had not been truthful when she told agents that she had only transported drugs from Phoenix to Albuquerque twice, following an initial "dry run" in which she carried no drugs. The government pointed out that, prior to conducting her final (and supposedly third) trip to Albuquerque, she sent text messages to her supplier in which she used the word "always" several times to discuss her travel plans, stating, for instance, that she intended to leave early in the morning "like always." (R. Vol. II at 47–51.)

In its initial ruling, the district court held that, although this presented a close case, Defendant had presented sufficient evidence of truthful and complete debriefing to be entitled to safety-valve relief. Specifically, the court held that Defendant's text-message references to the way she "always" made her trips to Albuquerque were too circumstantial to provide reliable proof that she had been

dishonest in describing the extent of her drug-distribution activities.

The government then filed a motion for reconsideration in which it asked the court to reconsider its safety-valve ruling based on previously undisclosed evidence from the earlier debriefings of two cooperating individuals. The government asserted that one cooperating individual informed agents that Defendant's distributor had sent drugs through various couriers, and he specifically identified Defendant as a courier who had made "6–7 deliveries" of drugs. (*Id.* at 122.) The government asserted that this information was confirmed by a second cooperating individual.

The district court entertained arguments on the issue and heard testimony from a special agent and Defendant. The court ultimately concluded that reconsideration was appropriate to prevent manifest injustice, as it would constitute a manifest injustice for Defendant to receive safety-valve relief when she had not been truthful, giving her an unearned benefit compared to other cooperators who in fact provided truthful and complete information to the government. On the merits, the court found the special agent's testimony regarding the cooperating witnesses' debriefings to be credible, while it found Defendant's credibility to have been effectively impeached on cross-examination. The court accordingly granted the motion for reconsideration and held that Defendant was not entitled to safety-valve relief because the evidence showed

that she had not been truthful in her statements regarding the number of drug deliveries she made. Defendant was subsequently sentenced to the mandatory minimum sentence of ten years.

On appeal, Defendant does not dispute that the evidence before the district court on reconsideration, although contested, was sufficient to support the court's conclusion that Defendant was untruthful in her debriefing with government agents. However, she argues that the district court abused its discretion in even considering the government's newly presented evidence at all. She contends that the government presented no valid basis for reconsideration, and thus the district court abused its discretion when it decided to reconsider its initial safety-valve ruling.

"We review a district court's decision to reconsider a prior ruling for abuse of discretion." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). "Motions to reconsider are proper in criminal cases," in part because "[a] district court should have the opportunity to correct alleged errors in its dispositions." *Id.* "A motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law." *Id.* "Specific grounds include: (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (internal quotation marks omitted).

As an initial matter, Defendant points out that the evidence the government presented for reconsideration does not qualify as "new evidence previously unavailable" because the cooperating-individual evidence was available to the government before the court made its initial ruling. This is true, but it is also irrelevant. Contrary to Defendant's arguments on appeal, it is clear that the district court did not grant reconsideration on this basis; rather, the court unambiguously held that it was granting reconsideration under the third basis listed in *Christy*, to prevent manifest injustice.

On the question of manifest injustice, Defendant argues that the district court could not grant reconsideration on this basis because the original ruling was not clearly erroneous or manifestly unjust. The only case she cites for support is an inapposite out-of-circuit bankruptcy court case in which the court was considering whether to grant reconsideration of its own prior decision. *See In re Roemmele*, 466 B.R. 706, 712 (Bankr. E.D. Pa 2012). Defendant does not cite, nor have we found, a single case in which an appellate court held that a district court abused its discretion by concluding that reconsideration was warranted to avoid a manifest injustice.

Our cases have stressed that reconsideration is a discretionary decision that "will not be reversed on review without a clear showing of abuse of discretion." *United States v. Montgomery*, 620 F.2d 753, 757 (10th Cir. 1980). In reviewing

-5-

for abuse of discretion, "we will reverse a determination only if the court exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (internal quotation marks omitted). "That is to say, we recognize that in many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." *Id.* Moreover, because the question of reconsideration is committed to the sound discretion of the district court, while "[t]he district court may prefer, even require, the government to explain why it failed to introduce an argument earlier, . . . that decision should rest with the district court." *United States v. Huff*, 782 F.3d 1221, 1225 (10th Cir. 2015).

In affirming district courts' discretionary decisions on motions for reconsideration, we have explained that "[t]he trial court has some interest in seeing that justice is done and in seeing that all of the facts are presented," *Montgomery*, 620 F.2d 757, and that the court "should have the opportunity to correct alleged errors in its dispositions," *Christy*, 739 F.3d at 539; *see also United States v. Randall*, 666 F.3d 1238, 1241–42 (10th Cir. 2011) ("The [Supreme] Court has . . . noted the 'wisdom of giving district courts the opportunity promptly to correct their own alleged errors.'" (quoting *United States*

*v. Dieter*, 429 U.S. 6, 8 (1976)). "The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). Here, the district court concluded that it should reconsider its earlier decision to reach a correct judgment and avoid the unwarranted sentencing disparity that would result if Defendant received safety-valve relief despite failing to provide truthful and complete information to the government. We are not persuaded that this conclusion fell outside the realm of choices that were rationally available to the court.

"In sum, it is our view that this was a matter which was subject to the discretion of the trial court and that the judge had a right to exercise it in the manner that he did." *Montgomery*, 620 F.2d at 757. We therefore affirm the district court's discretionary decision to grant the government's motion for reconsideration. Because we affirm on this ground, we need not consider the government's alternative waiver arguments.

The district court's judgment is **AFFIRMED**.

Entered for the Court


Monroe G. McKay
Circuit Judge
