FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 6, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHNNY SCOTT WARREN,

    Defendant - Appellant.

No. 20-1436

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:07-CR-00354-CMA-1)**
_____

Josh Lee, Assistant Federal Public Defender (Virginia L. Grady, Federal Public
Defender, with him on the briefs), Denver, Colorado, for Defendant – Appellant.

Paul Farley, Assistant U.S. Attorney (Matthew T. Kirsch, Acting United States Attorney,
with him on the briefs), Denver, Colorado, for Plaintiff – Appellee.
_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

In 2008, a jury in the United States District Court for the District of Colorado

found Johnny Scott Warren guilty of trafficking crack cocaine and unlawfully possessing

a firearm. The court sentenced him to 240 months' imprisonment. Shortly thereafter,

Congress passed the Fair Sentencing Act of 2010 which prospectively ameliorated

excessive sentences for crack cocaine offenses. With the passage of the First Step Act in 2018, Congress made the Fair Sentencing Act retroactive to the extent it granted judges the discretion to impose reduced sentences for crack cocaine offenders, like Mr. Warren, who were sentenced before the enactment of the Fair Sentencing Act.

Mr. Warren filed a motion in July 2019 requesting such a reduction. Mr. Warren's original sentence included a downward variance from the applicable United States Sentencing Guidelines range. He therefore asked for the same percentage variance from the Guidelines range that would have been generated had the Fair Sentencing Act applied to his original sentencing. The district court denied Mr. Warren's motion.

Seven months later, Mr. Warren moved for reconsideration. Although Mr. Warren's motion for reconsideration was untimely, the Government agreed to waive any procedural or timeliness bars. In his motion, Mr. Warren primarily argued he had been improperly designated a career offender by the sentencing court, which resulted in an inappropriately inflated Guidelines range. Mr. Warren also presented other arguments, including that the COVID-19 pandemic should be considered as part of the sentencing factors. The district court denied Mr. Warren's motion for reconsideration.

On appeal, Mr. Warren challenges only the district court's denial of his motion to reconsider. Specifically, he argues the district court erred in (1) applying the legal standard for reconsideration despite the Government's waiver, (2) holding that he could have raised COVID-19 in his initial motion for sentence reduction, and (3) failing to make an alternative holding anchored in the proper Guidelines calculation.

2

For the following reasons, we affirm the denial of Mr. Warren's motion for reconsideration.

## I.  BACKGROUND

### A.  Factual History

A federal grand jury sitting in the District of Colorado indicted Mr. Warren in 2007, charging him with possession with intent to distribute more than fifty grams of a substance containing cocaine base and being a felon in possession of a firearm. A jury found him guilty on both counts.

Prior to sentencing, the United States Probation Office filed a Presentence Investigation Report ("PSR"). The PSR recommended designating Mr. Warren as a career offender under United States Sentencing Commission, *Guidelines Manual*, §4B1.1 (2007) based upon (1) a 1996 conviction for unlawful use of a communications facility to facilitate a drug trafficking offense, (2) a 2001 conviction for second degree assault, and (3) a 2006 conviction for felony conspiracy to commit robbery. The PSR also recommended applying the Armed Career Criminal Act, 18 U.S.C. § 924(e), to Mr. Warren's felon-in-possession count based on his 2001 and 2006 convictions and a 1994 juvenile conviction for felony menacing.

In an addendum, the PSR explained the 2001 conviction for second degree assault was for "Second Degree Assault—Drugging Victim." ROA Vol. II at 119. The offense was therefore not a predicate for either the career offender Guidelines or the Armed Career Criminal Act, but the PSR continued to recommend Mr. Warren's designation as a

3

career offender based on the 1996 and 2006 convictions. And at sentencing, defense counsel conceded Mr. Warren qualified as a career offender.

At the time of sentencing, possession with intent to distribute fifty grams of cocaine base carried a mandatory minimum sentence of 120 months. Under the then-applicable Guidelines, the PSR calculated Mr. Warren's Guidelines range as 360 months to life on both counts. The sentencing court, however, varied downward from the Guidelines range and sentenced Mr. Warren to 240 months' imprisonment on the narcotics count and 120 months on the felon-in-possession count, with the sentences to run concurrently.

Two years later, Congress passed the Fair Sentencing Act which reduced the sentencing disparity between offenses for crack and powder cocaine. Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (2010). This change applied only prospectively, however, and did not then affect Mr. Warren. *See id.* In 2018, Congress passed the First Step Act which made the Fair Sentencing Act retroactive to the extent that it granted judges the discretion to impose a reduced sentence for crack cocaine offenders, like Mr. Warren, who were sentenced prior to the enactment of the Fair Sentencing Act. Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018).

### B.  Procedural History

Following the passage of the First Step Act in 2018, Mr. Warren filed a motion for a reduced sentence on July 31, 2019. In his motion, he stated his Guidelines range under the Fair Sentencing Act would have been 262–327 months rather than 360 months to life, and the Government agreed with his calculation. Mr. Warren requested a reduction of his

sentence from 240 months to 175 months. He reasoned that the sentencing court varied downward from the low end of his original Guidelines range by 33% to reach 240 months and that application of a similar 33% downward variance to his Fair Sentencing Act Guidelines range would result in a sentence of 175 months.

The district court denied Mr. Warren's request for a reduced sentence on November 7, 2019. The district court agreed Mr. Warren was eligible for relief under the First Step Act, but it denied relief because Mr. Warren's sentence was already below the low end of the revised Guidelines range and a sentence of 240 months remained appropriate based on the 18 U.S.C. § 3553(a) sentencing factors.

On June 22, 2020—more than seven months later—Mr. Warren filed a motion for reconsideration. Although his motion was untimely, he stated the Government had "agree[d] to waive any procedural or timeliness bars to the [c]ourt's reconsideration of Mr. Warren's Motion." ROA Vol. I at 263. Mr. Warren argued he had been improperly categorized as a career offender, and without the career offender designation, his Guidelines range would be 120–150 months under the First Step Act. He also argued the COVID-19 pandemic should weigh in favor of a reduced sentence.

The district court denied Mr. Warren's motion for reconsideration. It noted that this court's precedent authorizes motions to reconsider only under certain circumstances, none of which was present in Mr. Warren's motion—a change in controlling law, previously unavailable evidence, and correcting clear error or preventing manifest injustice. The district court also found Mr. Warren "concede[d]" in his motion for reconsideration "that he was correctly sentenced as a career offender in 2008," and it

5

noted he did not challenge his career offender status at his original sentencing. ROA Vol. I at 389.

In addition, the district court concluded a sentence reduction was not appropriate given the "serious and damaging" nature of Mr. Warren's prior offenses. *Id.* at 391. The district court cited the PSR's description of the facts underlying the 2001 second degree assault conviction and the 2006 conspiracy to commit robbery conviction. The former involved Mr. Warren shooting a driver at a red light and then continuing to chase the driver. And the latter charge was one of sixty-two charges brought for a "string of armed robberies and attempted home invasions." *Id.* Given this history and the downward variance in the original sentence, the district court found Mr. Warren's sentence "remains appropriate today." *Id.* at 392.

The district court declined to address Mr. Warren's COVID-19 argument. It stated Mr. Warren "could have, but chose not to, raise this argument in his original motion" and therefore it was not a "ground[] for reconsideration." *Id.* Mr. Warren filed a timely notice of appeal following the denial of his motion for reconsideration, which identifies only the denial of the motion for reconsideration as the order from which the appeal was taken.

We directed the parties to file supplemental briefing on two issues:

> (1) whether § 404(c) of the First Step Act of 2018, Pub. L. No. 115-391, § 404(c), 132 Stat. 5194, 5222, or 18 U.S.C. § 3582(c) bars motions for reconsideration of denials of motions made pursuant to § 404(b) of the First Step Act through § 3582(c)(1)(B) and (2) if so, whether the bar is waivable or jurisdictional.

*United States v. Warren*, No. 20-1436, Order at 1 (10th Cir. July 14, 2021). We consider the parties' arguments below.

## II.  DISCUSSION

We begin, as we must, with an examination of our own jurisdiction. First, we consider whether a motion to reconsider is barred under § 404(c) of the First Step Act or by 18 U.S.C. § 3582(c). Second, we address whether any potential bar may be waived. We then turn to the merits of Mr. Warren's appeal.

### A.  Jurisdiction

### 1.  Relevant Law

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). There are three exceptions to this general rule: (1) compassionate release; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure;" and (3) when "a sentencing range . . . has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o) . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)–(c)(2). Mr. Warren relies upon the second exception: "to the extent otherwise expressly

permitted by statute"—18 U.S.C. § 3582(c)(1)(B)—that is, he relies on the First Step Act.[1]

Section 404 of the First Step Act of 2018 provides defendants sentenced prior to the Fair Sentencing Act of 2010 an opportunity to seek a reduced sentence as though sections two and three of that Act "were in effect at the time the covered offense was committed." Pub. L. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). But § 404(c) provides that "[n]o court shall entertain a motion made under this section to reduce a sentence . . . if a previous motion made under this section to reduce the sentence was . . . denied after a complete review of the motion on the merits." *Id.* § 404(c).

The Federal Rules of Criminal Procedure "do not authorize a motion for reconsideration." *United States v. Randall*, 666 F.3d 1238, 1241 (10th Cir. 2011). Nonetheless, this court has held "[m]otions to reconsider are proper in criminal cases." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). Indeed, "[t]he Supreme Court has recognized motions for reconsideration in criminal proceedings at least since *United States v. Healy*, 376 U.S. 75, 77–78 . . . (1964)." *Randall*, 666 F.3d

---

[1] Although no party has raised the issue, we acknowledge that § 404 of the First Step Act has yet to be codified in the United States Code and that § 3582(c)(1)(B) governs motions for sentence modifications that are "otherwise expressly permitted by *statute*." *Compare* First Step Act of 2018, Pub. L. 115-391, § 404, 132 Stat. 5194, 5222 (2018), *with* 18 U.S.C. § 3582(c)(1)(B) (emphasis added). For the completeness of our analysis, however, we assume Congress intended § 404 to be treated as a "statute" for purposes of § 3582(c)(1)(B). In any event, § 404 provides an independent path to a sentence reduction in situations like the present.

at 1241. The authority to reconsider comes from the common law. *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010) (citing *Healy*, 376 U.S, at 77–80).

### 2. Section 404(c) Does Not Bar Mr. Warren's Motion

In response to our request for supplemental briefing, the Government does not argue that § 404(c) of the First Step Act provides an independent bar to motions for reconsideration. But it does contend that "Congress has foreclosed motions for reconsideration in all criminal proceedings under 18 U.S.C. § 3582(c), including § 404 of the First Step Act." Appellee Suppl. Br. at 8. Mr. Warren asserts that § 404(c) does not bar a motion for reconsideration because it applies only (1) to motions made under the First Step Act § 404, which a motion for reconsideration is not; (2) to motions to reduce a sentence, while a motion for reconsideration does not directly request such relief; and (3) where there is a complete review of a sentence, which necessarily includes reconsideration.

We agree that § 404(c) does not bar motions for reconsideration because by its plain terms, it applies only to "a motion made under this section." Motions for reconsideration are not specifically provided for in § 404 but instead arise from the court's inherent authority. *See Rollins*, 607 F.3d at 502; *see also Randall*, 666 F.3d at 1241 (relying on *Rollins* for the proposition that motions to reconsider are proper).

At face value, then, a motion to reconsider is not made pursuant to § 404 of the First Step Act, so § 404(c) does not present a bar to such a motion.[2]

### 3.  Under Our Precedent, § 3582(c) does Not Bar Mr. Warren's Motion

Whether § 404(c) prohibits Mr. Warren's motion to reconsider is of no import according to the Government because § 3582(c) bars such motions in proceedings to modify a sentence. The Government contends the creation of § 3582(c), with its express designation of only three paths to modification of a sentence, abrogated the common law practice of motions for reconsideration.

Relying on decisions from other circuits, the Government argues it is improper to assert the court's inherent authority "when there are *express statutory provisions* generally *prohibiting* motions for reconsideration." *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999) (emphasis in original). Rule 35 originally allowed district courts broad discretion to fix errors which procedurally or substantively made a sentence illegal.[3] *United States v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014). But as Rule 35 became one of the last ways for a

---

[2] Because we agree with Mr. Warren that his motion to reconsider is not barred by the plain language of § 404(c), we need not consider his other arguments for why the bar is inapplicable.

[3] District courts were permitted to "correct an illegal sentence at any time" and to "correct a sentence imposed in an illegal manner within the time provided . . . for the reduction of sentence." Fed. R. Crim. P. 35, Rule Applicable to Offenses Committed Prior to November 1, 1987.

district court to modify a sentence, Congress significantly restricted it.[4] *Id.*; *see also*

*Barragan-Mendoza*, 174 F.3d at 1029. "The unmistakable effect of these

amendments was to abrogate the district court's common-law power to revisit a

sentence and to tie any sentence reconsideration to narrowly drawn textual

provisions." *Townsend*, 762 F.3d at 646. In other words, "[i]n the sentencing context,

there is simply no such thing as a 'motion to reconsider' an otherwise final sentence."

*United States v. Dotz*, 455 F.3d 644, 648 (6th Cir. 2006); *see also United States v.*

*Gonzalez-Rodriguez*, 777 F.3d 37, 41 (1st Cir. 2015) ("[A]s to sentencing, Congress

has eliminated the common-law practice of allowing motions for reconsideration.");

*United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010); *United States v.*

*Austin*, 217 F.3d 595, 597 (8th Cir. 2000) (holding § 3582(c) barred a motion to

reconsider beyond the bounds of Rule 35); *but see United States v. Carr*, 932 F.2d

67, 69–72 (1st Cir. 1991) (suggesting § 3582(c) may have divested district court's

inherent authority to reconsider sentences but tolling the appeal period because it

could not determine that a motion for reconsideration was "unquestionably and

blatantly outside the district court's jurisdiction to resolve").

   In contrast, Mr. Warren argues that § 3582 does not "negate[] courts' inherent

authority to entertain motions for reconsideration" because a motion for

reconsideration is merely procedural and once a defendant is authorized to seek a

sentence reduction, courts may govern the procedure as to that motion. Appellant

---

[4] "Within 14 days after sentencing, the court may correct a sentence that
resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a).

Suppl. Br. at 6. Alternatively, he argues that § 404(c)'s requirement of "complete review" includes the requisite permission to file a motion for reconsideration. He relies on the Supreme Court's discussion of motions for reconsideration in the context of 28 U.S.C. § 2255.

In *Banister v. Davis,* the Court held that motions to alter or amend judgment under Rule 59(e) do not constitute second or successive petitions subject to the restrictions implemented by § 106 of the Antiterrorist and Effective Death Penalty Act. 140 S. Ct. 1698, 1708 (2020). Mr. Warren argues that just as such motions to alter or amend judgment under § 2255 are "part of a prisoner's first habeas proceeding," a motion for reconsideration is part of a defendant's motion under § 3582(c) for a reduction of sentence expressly permitted by statute. *Id*. Thus, he contends such motions are permissible.

In support, Mr. Warren offers this court's decision in *Randall*. There, the district court sentenced the defendant according to the then-applicable Sentencing Guidelines. *Randall*, 666 F.3d at 1239. Shortly thereafter, Amendment 742 to the Sentencing Guidelines took effect, and the defendant filed a motion to modify his sentence as permitted by the Amendment. *Id.* The district court denied the motion to modify sentence, and the defendant filed a motion to reconsider that decision more than two months later. *Id.* at 1240. The district court denied the motion to reconsider without discussing whether it was timely. *Id.* And the defendant filed a notice of appeal in this court twenty-eight days after the denial. *Id.*

12

To begin, we noted that a defendant typically has fourteen days to file a notice of appeal in a criminal matter. *Id.* at 1241. Importantly, however, "[u]nlike in civil cases, a timely appeal in a criminal case is not jurisdictional, but rather an inflexible claim-processing rule." *Id.* at 1241 (quotations omitted). Even though the defendant filed his notice of appeal twenty-eight days after the district court denied the motion to reconsider, making the notice untimely, we exercised our discretion to consider the appeal.

Turning to the merits of the district court's denial of the motion to reconsider, we noted: "Although the Federal Rules of Criminal Procedure do not authorize a motion for reconsideration, 'motions to reconsider in criminal prosecutions are proper.'" *Id.* at 1241 (quoting *Rollins,* 607 F.3d at 502). That is, we acknowledged the defendant's right to file for reconsideration of the district court's order denying a reduction in sentence. *Id.* at 1241–42. The focus of our review, however, was the time for filing such a motion. *Id.* at 1242.

Ultimately, we concluded that "a motion to reconsider an order granting or denying a sentence modification under § 3582(c)(2) must be brought within the time granted to appeal that order." *Id.* at 1243. Because the defendant did not file his motion to reconsider within fourteen days of the district court's order denying the motion to reduce sentence, we held the motion to reconsider was untimely and the district court properly denied it. *Id.*; *see also United States v. Mofle*, 989 F.3d 646, 648–49 (8th Cir. 2021) (citing *Randall* favorably and holding that a motion to

reconsider an order denying a motion to reduce sentence under § 3582(c)(2) must be brought within the time to appeal that denial).

According to Mr. Warren, *Randall* provides support for the conclusion that motions to reconsider are appropriate under § 3582(c)(2). The Government argues to the contrary, claiming *Randall* provides little guidance because whether motions for reconsideration were available under § 3582 was not raised, and the Government never filed a response to the defendant's *pro se* briefing.

It is true, no party raised the specific issue of whether a motion for reconsideration is proper in *Randall.* But it is equally true the *Randall* defendant never cited to § 3582 in seeking a reduction of his sentence or in asking the district court to reconsider its denial of that motion. *Randall*, 666 F.3d at 1239–40. Notwithstanding those omissions, this court framed the motion as one pursuant to § 3582 and engaged in a two-part analysis. First, we acknowledged that "criminal defendants may [] move for reconsideration." *Id.* at 1242. Second, accepting that the defendant could have filed such a motion, we considered when the motion must be filed. *Id.* at 1242–43. Since *Randall,* we have continued to focus only on the timeliness of a motion to reconsider an order denying a motion for reduction of sentence under § 3582.

For example, in *United States v. Amado*, 841 F.3d 867, 869 (10th Cir. 2016), the defendant entered a plea agreement, and the district court imposed a sentence. Subsequently, the defendant filed a motion for a reduction of sentence, seeking to take advantage of Amendment 782 to the Sentencing Guidelines. *Id.* The government

14

opposed the motion both as barred by the appeal waiver in the plea agreement and on the merits. *Id.* The district court denied the motion without explanation, and the defendant appealed. *Id.* While the appeal was pending, the defendant again moved for a reduction of sentence under § 3582(c)(2), arguing the government had withdrawn its objections. *Id.*

The district court first determined it could exercise jurisdiction over the motion despite the pending appeal under Federal Rule of Criminal Procedure 37(a)(3).[5] The district court then construed defendant's motion as a motion to reconsider and, relying on *Randall*, denied it as untimely. *Id.* at 870. On appeal, we stated, "the only problem we discern with the district court's decision is that, after having ruled the motion was untimely, the court denied the motion rather than dismissed it." *Id.* at 871. Specifically, we noted that Rule 37 applied only to timely motions, so the district court never had jurisdiction over the motion due to the pending appeal. *Id.*

We next considered the defendant's argument that the district court erred in construing his second § 3582(c)(2) motion as a motion to reconsider. *Id.* We rejected

---

[5] Rule 37(a) of the Federal Rules of Criminal Procedure provides:

If a timely motion is made for relief that the [district] court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
    (1) defer considering the motion;
    (2) deny the motion; or
    (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

that argument, explaining that the defendant's "second motion [to reduce sentence] falls within the very definition of a motion to reconsider." *Id.* at 872. As in *Randall*, there is no indication that either party questioned whether § 3582(c)(2) permits motions for reconsideration. But we firmly rejected the defendant's challenge to the characterization of his second § 3582(c)(2) motion as a motion for reconsideration.

Guided by our prior published decisions, we conclude motions for reconsideration can be filed under § 3582 in this circuit. Such motions are untimely, however, if not filed within the time to appeal the order that is the subject of reconsideration. *Randall*, 666 F.3d at 1243; *Amado,* 841 F.3d at 871.

Here, the district court denied Mr. Warren's motion to reduce his sentence under the first Step Act on November 7, 2019. Mr. Warren had fourteen days to appeal that order. Fed. R. App. P. 4(b)(1)(A). But he did not. Instead, he waited seven months before filing a motion to reconsider on June 22, 2020. Mr. Warren's motion to reconsider is therefore untimely. We now consider whether the untimeliness of Mr. Warren's motion to reconsider can be waived by the Government.

## 4. We Have Jurisdiction to Consider the Issues Raised in Mr. Warren's Motion for Reconsideration

This court has previously held that 18 U.S.C. § 3582(c) "operates as a 'clear' and mandatory restriction on a court's authority," expressing a "clear Congressional intent to be jurisdictional." *United States v. McGaughy*, 670 F.3d 1149, 1156–1158 (10th Cir. 2012) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 142 (2012)). We have repeatedly

emphasized the jurisdictional nature of the limitations set by § 3582(c). *United States v. Spaulding*, 802 F.3d 1110, 1124 (10th Cir. 2015) ("[Section] 3582(c) acts as a jurisdictional limitation on the ability of district courts to alter previously imposed sentences of imprisonment."); *United States v. White*, 765 F.3d 1240, 1244–45 (10th Cir. 2014) ("[D]istrict court[s are] authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so," and absent the "operation of one of a few narrowly-defined statutory exceptions, . . . federal courts generally lack jurisdiction to modify a term of imprisonment once it has been imposed." (internal quotation marks omitted)). Simply put, our precedent is clear that "[u]nless the basis for resentencing falls within one of the specific categories authorized by section 3582(c), the district court lack[s] jurisdiction." *United States v. Smartt*, 129 F.3d 539, 541 (10th Cir. 1997). Therefore, unless Mr. Warren's motion for reconsideration falls squarely within one of the three exceptions set out by § 3582(c), under our existing precedent, we lack jurisdiction. *United States v. Mannie*, 971 F.3d 1145, 1151–52 (10th Cir. 2020).[6]

Here, the original motion for a reduction of sentence was brought under one of the enumerated exceptions in § 3582(c). Specifically, his motion was authorized by the First

---

[6] This precedent has been called into serious question. The Supreme Court has clarified that deeming a provision jurisdictional requires an unequivocal statement from Congress: "If the Legislature clearly states that a prescription counts as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue; but when Congress does not rank a prescription as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1850 (2019) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006)). There

Step Act. And, as we have just explained, this court has held that motions to reconsider are proper in such cases. Thus, even under our precedent, we have jurisdiction to consider the issues Mr. Warren has properly raised in his motion for reconsideration.

Additionally, because the untimeliness of Mr. Warren's motion for reconsideration is not a jurisdictional bar, the Government's waiver of the timeliness issue is effective. Looking to Federal Rule of Appellate Procedure 4(b), a non-jurisdictional rule relating to criminal appeals, this court established a fourteen-day time limit to file motions for reconsideration in *Randall*. 666 F.3d at 1240–41. And in *Randall*, we explained "a timely appeal in a criminal case is not jurisdictional, but rather an inflexible claim-processing rule." *Id.* at 1241 (quotations omitted). Because no statute expressly provides for a fourteen-day limitation or states that it is jurisdictional, and because our precedent is clear that untimeliness in this context is not a jurisdictional bar, we may accept the Government's waiver and consider Mr. Warren's appeal of the denial of his motion to reconsider on the merits. We undertake that analysis now.

### B. Motion for Reconsideration

We review the denial of First Step Act relief "for an abuse of discretion, the same as other post-trial motions." *Mannie*, 971 F.3d at 1147–48. Likewise, we "review the

---

is no such statement in 18 U.S.C. § 3582(c)(2), which suggests that our precedent on this issue may need to be revisited. *See United States v. Hald*, 8 F.4th 932, 942 n.7 (10th Cir. 2021) (declining "to read a jurisdictional element in § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication . . . to that effect"). Because the original motion was filed under the exception provided in § 3582(c)(2), and our precedent recognizes a motion to reconsider as part of that original proceeding, we need not seek en banc reconsideration of this question here.

district court's denial of a motion for reconsideration for abuse of discretion." *Randall*, 666 F.3d at 1241.

### 1. Reconsideration Standard

This court has imported the standard from Federal Rule of Civil Procedure 60(b) to decide motions for reconsideration, holding that "[a] motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law." *Christy*, 739 F.3d at 539. The specific grounds which allow granting such motions include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* But "[a] motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015). Thus, such motions "should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *Id.* (quotation marks omitted).

Mr. Warren argues the district court improperly applied this law in evaluating his motion for reconsideration, particularly in applying it without providing him notice of its intent to do so. He argues that because the Government "agree[d] to waive any procedural or timeliness bars to the [c]ourt's reconsideration of Mr. Warren's Motion," the district court could not apply this standard to evaluate his motion. Appellant Br. at 11 (quoting ROA Vol. I at 263). We are not persuaded.

The Government did waive any timeliness or procedural issues with Mr. Warren's motion—including the seven-month delay in filing—but the Government did not

explicitly waive the applicable legal standard of review. Even if the Government had agreed to waive the applicable legal standards, it could not do so. It is the district court's sole prerogative to decide the applicable law when considering a motion, and therefore the parties have no power to waive a standard of review. "It is one thing to allow parties to forfeit claims, defenses, or lines of argument; it would be quite another to allow parties to stipulate or bind us to application of an incorrect legal standard." *Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009).

Our law is clear that a motion for reconsideration may be granted only "when the court has misapprehended the facts, a party's position, or the law." *Christy*, 739 F.3d at 539. Therefore, the district court was required to apply this standard of review notwithstanding any alleged agreement from the parties to waive the applicable law. And Mr. Warren has not briefed any argument suggesting that his motion should have been granted under the applicable legal standard.

We therefore affirm the district court's application of the appropriate legal standard to Mr. Warren's motion for reconsideration.

**2. COVID-19 Issue**

Mr. Warren also argues the district court's refusal to consider his argument that the COVID-19 pandemic weighed in favor of a sentence reduction was an abuse of discretion. The district court did not address Mr. Warren's COVID-19 argument because of its view that Mr. Warren "could have, but chose not to, raise this argument in his original motion." ROA Vol. 1 at 392. Mr. Warren argues this was error.

20

The district court's reasoning is incorrect. Mr. Warren could not have raised his COVID-19 argument in his original motion. Mr. Warren filed his original motion for a reduced sentence on July 31, 2019, months before the discovery of COVID-19 internationally, much less domestically. But under the facts here, we conclude any error of the district court on this argument was harmless.

Mr. Warren packages his COVID-19 argument as a challenge to the district court's weighing of the § 3553 sentencing factors. But at the time the court performed that analysis, there was no COVID-19 threat to Mr. Warren. And nothing about its subsequent presence suggests the district court erred when it weighed the sentencing factors as part of its decision to deny Mr. Warren's motion for a reduction in sentence. While Mr. Warren points to the risk of COVID-19 generally, he identifies nothing specific to his own circumstances. Mr. Warren does not argue he has any particular vulnerability which might make him more susceptible to serious harm from the pandemic.[7] And the mere fact that COVID-19 exists in society is not enough, without any additional context, to show that Mr. Warren would likely have received a reduced

---

[7] In addition, as of October 14, 2021, Mr. Warren's facility at the time of appeal, USP-Lee in Pennington Gap, Virginia, *see* ROA Vol. 1 at 382–83, had zero cases of COVID-19 and zero inmate deaths from COVID-19. *See* FEDERAL BUREAU OF PRISONS, *COVID-19 Coronavirus*, "COVID-19 cases," www.bop.gov/coronavirus/index.jsp (last visited October 14, 2021). It appears Mr. Warren has been relocated to FCI El Reno during the time of this appeal, s*ee* Johnny Scott Warren, FEDERAL BUREAU OF PRISONS, *Inmate Locator*, www.bop.gov/inmateloc/index.jsp (last visited December 10, 2021). As of December 10, 2021, FCI El Reno has zero current inmate cases and had only one inmate death as a result of COVID-19 since the pandemic began. *See* FEDERAL BUREAU OF PRISONS, *COVID-19 Coronavirus*, "COVID-19 cases," www.bop.gov/coronavirus/index.jsp (last visited December 10, 2021).

sentence if the district court had considered his argument. *Cf. United States v. Hemmelgarn*, 15 F.4th 1027, 1031–32 (10th Cir. 2021) (holding district court did not abuse its discretion in denying defendant's motion for compassionate release where defendant's medical condition did not put him at risk of severe illness from COVID-19 and there were no confirmed cases of COVID-19 at the facility where defendant was incarcerated); *United States v. Purify*, No. 20-5075, 2021 WL 5758294, at *4 (10th Cir. Dec. 3, 2021) (unpublished) (affirming a district court's denial of a motion for compassionate release because the defendant failed to state "how he is more susceptible or vulnerable to COVID-19 than the average prisoner") (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.")). If this were the case, all prisoners would be entitled to reduced sentences by virtue of the spread of COVID-19.

Thus, although the district court exceeded its discretion by concluding Mr. Warren could have bought his COVID-19 argument in his initial motion, any error was harmless. Harmless error in this context "is that which did not affect the district court's selection of the sentence imposed." *United States v. Montgomery*, 439 F.3d 1260, 1263 (10th Cir. 2006) (internal quotation marks omitted); *see also United States v. Powell*, 842 F. App'x 281, 285 (10th Cir. 2021) (unpublished) (applying this precedent in the context of the First Step Act). In reviewing Mr. Warren's motion, the district court weighed the § 3553(a) factors and undertook an in-depth analysis of the appropriateness of Mr. Warren's sentence. The fact that COVID-19 exists generally in the United States, in

absence of particular risk to Mr. Warren, would not have affected "the district court's selection of the sentence imposed." *Montgomery*, 439 F.3d at 1263 (quotation marks omitted). We therefore hold the district court's refusal to consider Mr. Warren's COVID-19 argument was an abuse of discretion but ultimately harmless. [8]

**3. Career Offender Status**

Mr. Warren also argues the district court was required to conduct an independent sentencing analysis anchored in his proffered Guidelines range—without the career offender designation. Mr. Warren is correct that we have previously held a career offender designation can and should be reviewed as part of a First Step Act motion. *United States v. Crooks*, 997 F.3d 1273, 1278 (10th Cir. 2021).

In the instant case, the district court did not decide whether the career offender classification applied. Instead, the district court assumed *arguendo* that the career offender classification was inapplicable. The district court then explained that, regardless of the career offender designation, "this Court need not ignore the facts of [Mr. Warren's] prior crimes" in deciding Mr. Warren's motion. ROA Vol. 1 at 390. It then concluded that "even without the career-offender classification, [Mr. Warren's] criminal history called for a lengthy sentence." *Id.* at 391. The district court also noted "that [Mr. Warren's] convictions were the result of plea deals in cases in which

---

[8] Despite the denial of his motion to reconsider, Mr. Warren is free to bring a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The success of that motion may be dependent on changes in the circumstances at his facility or his personal vulnerability to COVID-19.

he was charged with much more serious crimes. If the Government had known at that time that those pleas would not serve as predicates for career-offender status, it seems unlikely that [Mr. Warren] would have been offered such advantageous plea deals." *Id.* at 392 n.5.

Although the district court did not explicitly grapple with the precise Guidelines range proffered by Mr. Warren, it implicitly accepted that Guidelines range by performing its analysis based on the assumption the career offender classification did not apply. We see no error in this approach despite Mr. Warren's reliance on *Crooks*. There, the district court refused to consider the career offender issue entirely—believing it to be unreviewable. *Crooks*, 997 F.3d at 1278. Here, in contrast, the district court did consider the career-offender classification, assuming Mr. Warren was correct that it did not apply. But the district court then found the sentence was appropriate even in the absence of career offender status based on Mr. Warren's criminal history. Under these circumstances, the district court did not err.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Mr. Warren's motion for reconsideration.